Argued and submitted July 22, reversed and remanded September 23, 1998

KLAU-MED, INC.,
*Appellant,*

*v.*

BODYWORKS MEDICAL, INC.,
an Oregon corporation;
Richard D. Kruse; Amy L. Persad and
Jason A. Bolger,
*Respondents.*

(C96-0175CV; CA A96426)

964 P2d 1150

Christine P. Hayes argued the cause for appellant. With her on the briefs were Keith A. Ketterline and Stoll Stoll Berne Lokting & Shlachter P.C.

C. Thomas Davis argued the cause and filed the brief for respondents Bodyworks Medical, Inc. and Richard D. Kruse. Jeffrey M. Batchelor argued the cause for respondents Amy L. Persad and Jason A. Bolger. With them on the joint brief were Richard C. Hunt and Lane Powell Spears Lubersky.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff appeals from a judgment dismissing its action as a sanction for discovery violations. Because we conclude that the court failed to consider less onerous sanctions for the violations and to explain why those lesser sanctions were inadequate, we reverse.

Plaintiff brought this action for breach of contract and intentional interference with business relations in February 1996. On March 28, 1996, defendants served plaintiff with a request for production of documents in the action. On May 16, 1996, plaintiff served a response to that request, objecting to certain requests and agreeing to produce certain documents. On August 14, 1996, defendants served a second production request, seeking, among other documents, any and all of plaintiff's banking records for the years 1994 to 1995. In that request, defendants also sought any documents reflecting any law enforcement investigations of Alex Wright, whom defendants understood to be plaintiff's chief executive, in regard to banking irregularities or checks written on insufficient funds for the period between 1990 and the date of the request. Plaintiff did not respond to that request.

On September 25, 1996, defendants filed a motion to compel production. On September 27, 1996, defendants filed a motion to compel Wright's appearance at deposition. A hearing on both motions was held on September 30, 1996. At the hearing, plaintiff agreed to produce, pursuant to a confidentiality agreement, certain documents as ordered by the court, but argued that it could not be required to produce Wright for deposition because he was no longer an employee of the company.

At the time of the hearing, the attorneys for both sides believed that Wright was residing in Florida. Wright's wife, Kimberly Wright, who had taken over his position as plaintiff's chief executive, was present at the hearing and did not offer any information to contradict that belief. The trial court ruled that defendants should be allowed to depose Wright but that defendants would bear the burden of paying for Wright to come to Oregon from Florida.[1]

---

[1] The court stated that it would reconsider which party should bear the costs of the deposition if further evidence should reveal that Wright was, indeed, still acting for the corporation.

On October 9, 1996, the trial court entered an order requiring plaintiff to produce the documents discussed at the September 30 hearing, as well as any documents showing law enforcement investigations of checks written on insufficient funds by plaintiff or Wright, along with an authorization to examine plaintiff's financial records, within ten days of the September 30 hearing. On the same date, the trial court entered a second order requiring plaintiff to make Wright available for deposition at defendants' expense. On October 18, 1996, defendants filed a motion to compel Wright's appearance for deposition on November 5 and 6, 1996, at plaintiff's expense, on the ground that new information existed to show that Wright was still employed by plaintiff. On October 31, 1996, plaintiff advised defendants that Wright would not be available for deposition until late December 1996 or early January 1997.[2] At that time, defendants still believed that Wright was in Florida. On November 4, 1996, defendants moved to dismiss the action pursuant to ORCP 46 B,[3] on the ground that plaintiff had failed to comply with the court's discovery order by refusing to produce Wright for deposition. A hearing on the motion was held on November 25, 1996. At the hearing, defendants also argued as grounds for dismissal that plaintiff had failed to comply with the court's document production orders. Plaintiff did not appear at the hearing. The trial court granted the motion to dismiss, based on its conclusion that plaintiff willfully had violated the earlier discovery orders.

On November 26, plaintiff filed a motion for rehearing and reconsideration, claiming excusable neglect. A rehearing was held on December 9, 1996. At that hearing,

---

[2] At that point, trial was scheduled to begin on December 12, 1996. Plaintiff had moved to reset the trial date, but that motion had not yet been considered by the court. The motion to reset eventually was denied.

[3] ORCP 46 B provides, in relevant part:

"(2) If a party * * * fails to obey an order to provide or permit discovery * * * the court in which the action is pending may make such orders in regard to the failure as are just, including among others, the following:

"* * * * *

"(2)(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment of default against the disobedient party[.]"

defendants notified the court that they had received infor-
mation that Wright was incarcerated at the federal peniten-
tiary in Sheridan, Oregon, and had been there since April 22,
1996. Defendants argued that plaintiff had been aware of
Wright's whereabouts at the time of the September 30 hear-
ing, yet had done nothing to correct the misperception that he
was in Florida.[4]

On January 13, 1997, the trial court issued an order
dismissing the action, stating:

"This matter came to the above court on December 9,
1996, by way of a motion for expedited hearing for reconsid-
eration of the court's order of dismissal. The court having
reviewed defendant's [*sic*] motion, papers and supporting
affidavits, plaintiff's opposition papers and supporting affi-
davits and other pleadings and argument of the parties in
this case, the court makes the following findings:

"1.   On October 9, 1996[,] Circuit Court Judge Alan C.
Bonebrake entered orders with respect to the deposition of
Alex Wright and compelling plaintiffs to produce
documents.

"2.   Plaintiff and plaintiff's counsel were made aware of
these orders.

"3.   Plaintiff has failed to comply with the court's
orders regarding the deposition of Alex Wright and the
order compelling plaintiff to produce documents in response
to defendants' production requests.

"4.   Plaintiff's previous counsel with plaintiff's CEO
and wife of Alex Wright present in court indicated Mr.
Wright was in Florida and did so in a hearing on September
30, 1996.

"5.   Plaintiff has failed to comply with the court's
orders of October 9, 1996.

---

[4] The parties agree that plaintiff's attorney at the time of the September 30
hearing did not know that Wright was in Oregon. Plaintiff fired that attorney
immediately after the September 30 hearing. The attorney who replaced the fired
attorney admitted at the December 9 hearing that she knew that Wright was in
Oregon during the time that she represented plaintiff, but stated that she "didn't
feel that it was [her] responsibility to help the defendants find a witness that they
wanted to call."

"6.   The failure of plaintiff to comply with the court's orders of October 9, 1996, was knowing and willful.

"7.   Plaintiff's current counsel was aware that Mr. Wright was not in Florida but in Oregon on September 30, 1996. She did not inform the court that Mr. Wright was in Oregon in Federal custody and had been in Oregon at the time previous counsel represented Mr. Wright was in Florida (previous counsel apparently didn't know Alex Wright was in Federal custody in Oregon).

"8.   Ms. Hoffman[, plaintiff's current counsel,] represented to the defendant's [sic] counsel that she would make Mr. Wright available for deposition at a time that was weeks after the trial setting. Ms. Hoffman knew she was going to ask the court for a reset but had not as yet done so. She was not in a position to know whether or not the court would grant her soon-to-[be-]made request for a reset. She also knew or should have known Mr. Wright was not scheduled to be released from Federal custody at the time she indicated Mr. Wright would 'be in town and available for depositions * * *.'

"9.   Ms. Hoffman has intentionally perpetrated the assertion that Mr. Wright was and is in Florida through her filings of Affidavits on November 26th and December 4th and a memorandum filed on December 2, 1996.

"(1)   Ms[.] Hoffman * * * intentionally misled the court and counsel as to the whereabouts of Alex Wright.

"(2)   Ms[.] Hoffman intentionally continued that impression throughout the time she represented plaintiff up until the true facts were stated in court by opposing counsel at the hearing on December 9, 1996.

"(3)   Ms[.] Hoffman's perpetration of the false information misled the court and counsel and caused substantial attorney fees on the part of defendants and substantial court time and scheduling difficulties on the part of the court[.]

"Based upon the court's specific findings and conclusions, IT IS ORDERED as follows:

"(1)   Plaintiff's claims are dismissed with prejudice as to all defendants.

"(2) All other pending claims in this litigation, including the counterclaims of Amy L. Persad and Jason [A.] Bolger, are dismissed.

"(3) Defendants shall be awarded all costs and disbursements in defending this action.

"(4) Defendants shall be awarded their reasonable attorneys' fees in an amount to be determined by the court following submission of affidavits and supporting papers by defendants and affidavits and supporting papers by plaintiff.

"(5) Said award of attorneys' fees will be jointly and severally against the plaintiff and plaintiff's counsel, Amy Hoffman."

On appeal, plaintiff contends that the trial court erred by: (1) concluding that plaintiff's failure to produce Wright for deposition was a discovery violation; (2) concluding that plaintiff's discovery violations had been knowing and willful; and (3) failing to consider less onerous sanctions than dismissal and failing to explain why those lesser sanctions were inadequate. Plaintiff further contends that the trial court's award of attorney fees to defendants exceeds the amount allowable under ORCP 46. Defendants respond that plaintiff's lack of candor with the court as to the whereabouts of Wright was sufficient, in itself, to support the dismissal but argue as well that plaintiff's history of blocking discovery required dismissal.

In *Pamplin v. Victoria*, 319 Or 429, 877 P2d 1196 (1994), the Supreme Court held that, when dismissing an action as a sanction for discovery violations, the trial court must make findings sufficient to allow "meaningful appellate review." *Id.* at 436. In order properly to assess the propriety of that sanction, the court stated, "an appellate court needs to know (1) the historical facts on which the trial court based its decision to impose it and (2) the analytical process by which the trial court concluded that dismissal is 'just' in view of those facts *and in view of other sanctions that are available.*" *Id.* at 437 (emphasis added). This court has interpreted that statement to mean that the trial court is required not only to make express findings that the penalized party willfully and knowingly disobeyed the court's orders but also to make

express findings that lesser sanctions are not appropriate. *Stasch v. '69 Investment, Inc.*, 147 Or App 46, 52, 934 P2d 630 (1997). In this case, although the trial court set out in detail the historical facts supporting its conclusion, it did not offer any discussion or analysis of sanctions other than dismissal. There are any number of possible sanctions available to remedy discovery violations. *See* ORCP 46 B (listing sanctions available to the court). Without an explanation as to why all other sanctions were not appropriate, we cannot determine whether the trial court's decision was, under the circumstances, just.[5]

■ Defendants argue that for this court to remand for further consideration of lesser sanctions would be a "triumph of form over substance," because the trial court simply could respond that it had, indeed, considered lesser sanctions. Defendants misunderstand the import of *Pamplin*. The trial court not only must *consider* those lesser sanctions, it must also provide an analysis *and* explanation of why those lesser sanctions are inadequate. The purpose of this exercise, in addition to allowing for meaningful appellate review, is to allow the trial court the opportunity to reflect on the issues and to decide if dismissal, "the most drastic of sanctions," *Pamplin v. Victoria*, 138 Or App 563, 567, 909 P2d 1245 (1996) (on remand), is truly the most appropriate response. Accordingly, we reverse the trial court's judgment of dismissal and remand for reconsideration. Because of our disposition, we do not address plaintiff's other objections to the dismissal of its claims or its second assignment of error.

Reversed and remanded.

---

[5] We reject defendants' argument that plaintiff's actions were so egregious that dismissal was the only appropriate sanction. Dismissal is a sanction of last, not first, resort, *Stasch*, 147 Or App at 52, and should not be invoked until all other possible sanctions have been tried or considered.