Argued and submitted March 16, affirmed July 18, 2007

Robyn M. BELINSKEY,
*Plaintiff-Appellant,*

*v.*

Julia R. CLOOTEN,
*Defendant-Respondent.*

Clackamas County Circuit Court
CV04060296; A130651

164 P3d 1163

Willard E. Merkel argued the cause for appellant. With him on the briefs was Merkel & Associates.

Wendy M. Margolis argued the cause for respondent. With her on the brief were Thomas W. Brown and Cosgrave Vergeer Kester LLP.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe,* Judges.

EDMONDS, P. J.

---

## EDMONDS, P. J.

Plaintiff appeals a judgment dismissing her complaint as a sanction for violating a discovery order under ORCP 46 B(2)(c). Plaintiff contends that the trial court abused its discretion in dismissing the complaint and that, in any event, the trial court's findings do not justify its decision or explain why a less onerous sanction was inappropriate. Plaintiff also argues that the trial court lacked the authority to order her to pay $2,500 in "cancellation fees" for failing to appear for medical examinations scheduled by defendant. For the reasons that follow, we affirm.

Plaintiff was injured in a car accident in October 2002 and brought this action seeking damages from defendant, the driver of the other vehicle. At the time she filed her complaint, plaintiff was living in Oregon and was represented by counsel. Sometime thereafter, plaintiff moved to Wyoming, and her counsel withdrew. She proceeded *pro se* for several months, until May 2005, when she retained new counsel.

In January 2005, while plaintiff was representing herself, defendant's counsel sent a letter to plaintiff advising her that an independent medical examination (IME) had been scheduled for March 14 in Portland and indicating that she should contact defendant's counsel immediately if she could not attend. Plaintiff returned that letter to defendant with a handwritten note that stated that she would not appear for the IME unless defendant paid for her airfare from Wyoming and her childcare costs. Plaintiff did not appear for the IME.

On March 3, 2005, defendant filed a motion to compel plaintiff's attendance at an IME and to compel her compliance with a subpoena for medical records. Plaintiff, still *pro se*, did not file a response or appear at the April 4, 2005, hearing on the motion. At the hearing, the trial court granted defendant's motion. That same day, defense counsel left messages for plaintiff informing her of the court's ruling. Counsel also sent to plaintiff a proposed form of order and a letter indicating that the court had granted the motion and that she had been ordered to attend an IME on April 21, 2005. Two

days before the scheduled appointment, plaintiff cancelled the IME.

In May 2005, defendant filed a motion to dismiss the action with prejudice and to require plaintiff to pay fees that defendant had incurred as a result of the cancelled IMEs and attorney fees; alternatively, defendant moved to reset the impending May trial date and to compel plaintiff's attendance at a future IME. The court reset the trial and scheduled a hearing on defendant's motions for June 27.

At the June hearing, plaintiff was represented by counsel. After hearing arguments from both parties, the trial court refused to dismiss the case. Instead, the court ordered that plaintiff pay $1,000 as a sanction for cancelling the court-ordered IME and that plaintiff appear at an IME at her own expense "no later than September 23, 2005." The court further ordered that, if plaintiff did not comply with the order, her complaint would be dismissed with prejudice.

Two days later, defense counsel sent a letter to plaintiff's counsel that indicated that the IME was scheduled for September 9, 2005. On August 26, 2005, defendant served on plaintiff a motion to compel the production of medical records. The motion referenced plaintiff's repeated failure to attend scheduled IMEs and attached a copy of the order from the June hearing. The motion then stated that the court-ordered "IME is set for September 9, 2005." Nevertheless, plaintiff did not show up for the IME on September 9.

On September 14, 2005, six weeks before the trial date, defendant filed another motion to dismiss with prejudice—this time, based on plaintiff's failure to appear at the IME on September 9. The motion was heard on September 26. At the hearing, plaintiff's counsel argued that plaintiff's failure to attend the latest scheduled IME was a result of "[s]imply confusion" due to the discrepancy between the September 23 date stated in the order from the June hearing and the September 9 date for the IME stated in the letter from defendant's counsel. Plaintiff's counsel contended that his office had not calendared the date correctly and that plaintiff's failure to attend the IME was not intentional. Counsel and the court then engaged in the following colloquy:

"THE COURT: Well, you may have indicated the client misunderstood it, but there's nothing in [your briefing] saying, you know, 'We made a mistake in our office. We're sorry. This shouldn't have occurred, and we don't want our client to suffer for that.' But instead I get a motion or a response from your office blaming the defense for the confusion. There was—there was no confusion.

"I read it as * * * a clean record, and I'm astounded that this occurred.

"[PLAINTIFF'S COUNSEL]: Well, again, I think our—our response does indicate that we don't believe the client should suffer for that. We did calendar it for September 23. The client—

"THE COURT: Well, I agree that the client shouldn't suffer, but here's what I'm going to do: I'm going to order—I'm going to allow the motion to dismiss, but I will not dismiss it with prejudice, but it will be dismissed without prejudice. The defense will be granted the regular and normal costs that they will get on a dismissal, plus the sum of $2,500, which represents the amount of the cancellation fees that the—that the defense incurred for each IME.

"[PLAINTIFF'S COUNSEL]: Your Honor, the dismissal is an issue for our client, because she's past the statute of limitations and can't refile it. So I think the order that you propose may be appropriate, but a dismissal, we don't think, is appropriate.

"[DEFENDANT'S COUNSEL]: Your Honor, I would—

"THE COURT: I understand what you think, but that is the order.

"[PLAINTIFF'S COUNSEL]: All right, Your Honor. We would like you to make the findings that are set forth in [*Klau-Med, Inc. v. Bodyworks Medical, Inc.*, 156 Or App 138, 964 P2d 1150 (1998)]—the required findings that are set forth in the *Klau-Med* case in the motion that we had filed."

After responding to a question from defendant's counsel regarding the nature of the $2,500 sum awarded to defendant, the court stated:

"And, at—at Plaintiff's counsel's request, I do find that the plaintiff has engaged in a course of conduct that, number

one, attempted to interfere with the compliance with lawfully issued subpoenas to obtain discovery.

"I find that the plaintiff failed to attend three previously scheduled independent medical examinations after reasonable notice.

"I find that the defense [incurred] cancellation fees for the three IMEs that were canceled, in the total sum of $2,500.

"I also find that the plaintiff has attempted to shift responsibility to defense counsel for creating what— what the plaintiff contends [is] confusion for the missed September 9th, 2005 independent medical examination without any supporting basis.

"The plaintiff directly violated [the] direct order issued on June 27th, '05, which required a payment of $1,000 plus attend an IME to be scheduled no later than September 23rd, '05. And the plaintiff's sought reimbursement of the travel expenses for the plaintiff buying a ticket to come to Portland on September 23rd, '05, which was the last date that an IME could have been scheduled, which was not scheduled, nor was there notice of an IME for September 23rd, '05.

"That will be the ruling."

The trial court then entered judgment dismissing plaintiff's claims without prejudice and awarding sanctions of $2,500 to defendant. This appeal followed.

On appeal, plaintiff advances two assignments of error. In her first assignment of error, she argues that the trial court failed to make the findings necessary to dismiss her complaint under ORCP 46 B(2)(c). More specifically, plaintiff argues that the trial court did not make findings that plaintiff acted willfully or in bad faith, or that lesser sanctions were inadequate—findings required by the holdings in *Pamplin v. Victoria*, 319 Or 429, 436, 877 P2d 1196 (1994), and in *Klau-Med, Inc.*, 156 Or App at 144-45, a case in which this court applied *Pamplin*. In response to that assignment, defendant initially argues that *Pamplin* and *Klau-Med, Inc.*, apply only to dismissals *with* prejudice under ORCP 46 B(2)(c); thus, because this case involved a dismissal

*without* prejudice, those findings are not required. Alternatively, she argues that, even if the rule in *Pamplin* and *Klau-Med, Inc.* applies, the trial court's findings are adequate to satisfy the requirements of those cases.

■　　Our first task, then, is to determine whether a trial court is required under ORCP 46 B(2)(c) to expressly find that a disobedient party acted willfully or in bad faith, and that no lesser sanctions are adequate, before dismissing a complaint *without* prejudice for failure to comply with a discovery order.[1] The question is one of legislative intent, which we answer by following the standard method of statutory construction. *See Pamplin*, 319 Or at 433 ("ORCP 46 B(2)(c) is a statute, to which we apply the usual method of statutory interpretation."). We begin with the text of the statute, read in context.

ORCP 46 B(2) provides that, if a party "fails to obey an order to provide or permit discovery," including an order to submit to an IME, the court

> "may make such orders in regard to the failure as are just, including among others, the following:
>
> "* * * * *
>
> "B(2)(c)　An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party[.]"

On its face, ORCP 46 B(2) does not require any showing beyond the fact that a party "fail[ed]" to obey the relevant order and that the sanction imposed is "just." That is, the text of the statute itself does not appear to require a showing that the failure was willful or in bad faith, nor does it expressly

---

[1] In the trial court, plaintiff argued that a dismissal without prejudice would be problematic because the statute of limitations had expired. We recognize that, under some circumstances, a dismissal without prejudice could operate, for practical purposes, as a dismissal with prejudice—for example, if a plaintiff were unable to refile the complaint because of the statute of limitations. The Oregon legislature has enacted a statute that permits plaintiffs who find themselves in such circumstances to refile their complaint beyond the limitations period. *See* ORS 12.220. Because plaintiff does not argue on appeal that the trial court ruling operated to bar her from refiling her complaint, we do not discuss that issue further.

require that the trial court consider lesser sanctions before dismissing the action.

As part of the text of the statute, however, we also consider the Supreme Court's prior construction of ORCP 46 B(2)(c). *State v. Reid*, 319 Or 65, 68-69, 872 P2d 416 (1994) (Supreme Court's prior construction of a statute becomes a part of the statute as if written into it at the time of its enactment.). In *Pamplin*, the Supreme Court examined whether the sanction of dismissal with prejudice under ORCP 46 B(2)(c) required a showing of bad faith, willfulness, or a similar degree of fault. The court began its analysis with the text of the statute:

> "The text of ORCP 46 B(2)(c) does not expressly state whether the party seeking discovery must show prejudice to it or willful disobedience by the other party. That rule does, however, require the sanction imposed to be 'just,' and a prerequisite for imposition of a sanction is that a party 'fails to obey an order to provide or permit discovery.' Those phrases in ORCP 46 B(2)(c) could, in context, plausibly be read to suggest the requirements that plaintiffs urge us to adopt [regarding prejudice and willful disobedience]; but the text and context are not definitive."

*Pamplin*, 319 Or at 433.

Because the text of the statute was not dispositive, the court then turned to decisions of the United States Supreme Court concerning FRCP 37(b)(2)(C), the federal counterpart and predecessor to ORCP 46 B(2)(c). *Id.* The court first examined *Societe Internationale v. Rogers*, 357 US 19, 78 S Ct 1087, 2 L Ed 2d 1255 (1958), and concluded that, by implication, *Societe Internationale* "appears to mean that dismissal under FRCP 37(b)(2) is justified when there is willfulness, bad faith, or fault of a similar degree on the part of the disobedient party." *Pamplin*, 319 Or at 434. The court continued:

> "Because we presume that the legislature adopted that construction of FRCP 37(b)(2) when it enacted ORCP 46 B(2)(c), *we hold that, under ORCP 46 B(2)(c), a finding of willfulness, bad faith, or fault of a similar degree on the party of the disobedient party is required.*"

*Id.* (emphasis added).

The *Pamplin* court also addressed "whether findings of fact are required to support the sanction of dismissal under ORCP 46 B(2)(c)." *Id.* at 436. The court observed that, in a similar context—the award of attorney fees under ORS 20.105(1)—findings were imperative for " 'meaningful review by an appellate court.' " *Id.* (quoting *Matizza v. Foster*, 311 Or 1, 10, 803 P2d 723 (1990)). It then concluded:

> "Here, as in *Mattiza*, the sanction of dismissal under ORCP 46 B(2)(c) is a 'situation in which special findings are a prerequisite to meaningful review by an appellate court.' As discussed above, that sanction is appropriate only when it is 'just' and only when there is willfulness, bad faith, or other fault of like magnitude by the disobedient party. To assess the propriety of imposing that sanction, an appellate court needs to know (1) the historical facts on which the trial court based its decision to impose it and (2) the analytical process by which the trial court concluded that dismissal is 'just' in view of those facts and *in view of the other sanctions that are available*. The present case provides a classic example of the difficulty of meaningful appellate review, because of the unresolved factual questions in the record."

319 Or at 436-37 (emphasis added).

Plaintiff contends that, because neither *Pamplin* nor ORCP 46 B(2)(c) distinguishes between dismissals with prejudice and dismissals without prejudice, the rule of *Pamplin* requiring findings of willfulness, bad faith, or similar fault must also apply to dismissals without prejudice. That argument has initial appeal but does not withstand further scrutiny. To be sure, *Pamplin* did not explicitly distinguish between dismissals "with prejudice" and dismissals "without prejudice" in the course of its analysis. However, the *Pamplin* court's reliance on the history underlying FRCP 37(b)(2), the federal counterpart to ORCP 46 B(2)(c), resolves the issue before us.

*Pamplin*, as discussed above, was based on the United States Supreme Court's holding in *Societe Internationale*, which the *Pamplin* court interpreted to mean "that dismissal under FRCP 37(b)(2) is justified when there is willfulness, bad faith, or fault of a similar degree on the part of the disobedient party." 319 Or at 434. *Societe Internationale*, like

*Pamplin,* involved a dismissal with prejudice. And, significantly, that fact was central to the United States Supreme Court's reasoning regarding the construction of FRCP 37(b). The Court explained that the plain language of the rule—"refuses to obey"—did not require willfulness or bad faith.[2] Rather, the Court held, "willfulness or good faith * * * are relevant only to the path which the District Court might follow in dealing with [a party's] failure to comply." 357 US at 208. However, it concluded that

> "[t]he provisions of Rule 37 which are here involved must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law, and more particularly against the opinions of this Court in *Hovey v. Elliott,* 167 US 409, [17 S Ct 841, 42 L Ed 215, and *Hammond Packing Co. v. State of Arkansas,* 212 US 322, [29 S Ct 370 (1897)], 53 L Ed 520 (1909)]. *These decisions establish that there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause. The authors of Rule 37 were well aware of these constitutional considerations.*"

357 US at 209 (emphasis added). The court ultimately held that, because of those constitutional considerations, "Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." *Id.* at 212.

Thus, it is clear that *Societe Internationale* announced a rule that was limited in scope: When a dismissal

---

[2] ORCP 46 B(2)(c) uses the term "fails to obey" rather than "refuses to obey." Before *Societe Internationale* was decided, some courts had concluded that the use of the word "refuses" had signaled Congressional intent to impose a willfulness requirement. As discussed later in this opinion, *Societe Internationale* rejected that understanding of the word "refuses." 214 Or App at 182. However, after *Societe Internationale,* the Fifth Circuit once again held that the term "refuses" embodies a requirement of willfulness in FRCP 37(b)(2)(C). In response, Congress changed the language of FRCP 37(b)(2)(C) from "refuses" to "fails" to "bring the rule into harmony" with *Societe Internationale* and to clarify that the rule did not require a showing of willfulness. *See* Advisory Committee Notes to 1970 Amendment to Rule 37(b)(2). ORCP 46 B(2)(c) was enacted after that change to FRCP 37(b)(2)(C) had occurred.

will dispose of an action in a manner that does not afford a party an opportunity for a hearing on the merits, thereby raising due process concerns, FRCP 37 requires willfulness, bad faith, or similar fault on the part of the disobedient party. It is equally clear that the *Pamplin* court wrote that same limitation into the text of ORCP 46 B(2)(c). We conclude, therefore, that the rule of *Pamplin* does not require findings of willfulness, bad faith, or similar fault as a predicate to a dismissal *without* prejudice—that is, a dismissal that allows a plaintiff to refile the complaint and thereby obtain a hearing on the merits.

The remaining question is whether the history of ORCP 46 B(2)(c) evidences an intent to require a court to find willfulness, bad faith, or a comparable degree of fault when it dismisses an action without prejudice. The Supreme Court's decision in *Societe Internationale* is illuminating on that issue as well. In rejecting the argument that the "refuses to obey" language imposes a willfulness requirement, the court explained:

> "[T]his argument turns on too fine a literalism and unduly accents certain distinctions found in the language of the various subsections of Rule 37. * * * For purposes of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey' simply by failing to comply with an order. *So construed the Rule allows a court all the flexibility it might need in framing an order appropriate to a particular situation.*"

357 US at 208 (emphasis added). Because ORCP 46 B(2)(c) was based on FRCP 37, as construed in *Societe Internationale*, we conclude that ORCP 46 B(2)(c) was similarly intended to give trial courts flexibility in framing an appropriate sanction where a party fails to obey a discovery order. Moreover, there is no indication in the legislative history of ORCP 46 B(2)(c) that its drafters intended to bridle that flexibility absent the due process concerns that result from a dismissal that denies a plaintiff a hearing on the merits.

■ Thus, we conclude that, where the trial court's dismissal is without prejudice and permits the plaintiff to pursue a hearing on the merits, the trial court is not required to find willfulness, bad faith, or a similar degree of fault before imposing the sanction. Rather, the trial court must find that

the plaintiff "fail[ed] to obey" a discovery order and that the sanction of dismissal is "just" under the circumstances.

Here, the trial court found that plaintiff failed to obey an order—that she "directly violated [the] direct order issued on June 27th, '05, which required a payment of $1,000 plus attend an IME to be scheduled no later than September 23rd, '05." The court also explained the circumstances leading up to that failure, including that plaintiff "attempted to interfere with the compliance with lawfully issued subpoenas to obtain discovery"; that plaintiff "failed to attend three previously scheduled independent medical examinations after reasonable notice"; that defendant incurred cancellation fees for the three IMEs; and that "plaintiff has attempted to shift responsibility to defense counsel for creating what—what the plaintiff contends [is] confusion for the missed September 9th, 2005 independent medical examination without any supporting basis." The trial court also considered other sanctions that were available in determining what would be a "just" sanction under the circumstances—it expressly *declined* to impose the sanction of dismissal with prejudice and instead imposed the lesser sanction of dismissal without prejudice. On this record, we cannot say that the trial court abused its discretion in dismissing plaintiff's complaint without prejudice.

In her second assignment of error, plaintiff contends that the court exceeded its authority in awarding defendant $2,500 in cancellation fees. Plaintiff did not preserve that argument below, but urges us to review the issue as error apparent on the face of the record. ORAP 5.45. Because plaintiff's arguments would require us to choose among competing inferences and because the error, if any, is not obvious, we reject plaintiff's second assignment of error without further discussion.

Affirmed.