1998 OK CIV APP 93

HOTELS, INC., an Oklahoma corporation, d/b/a Howard Johnson–Remington Park Lodge, Appellee,

v.

KAMPAR CORPORATION, a California corporation, Appellant,

and

Brenda McLean, Peak Entertainment International, a partnership, Pentacle Peak Enterprises, Inc., a Texas corporation, Elite Arts International, a texas corporation, Khazar Investments Corporation, J. Gordon Lunn, Liberty Foundation, Latonya Swinney, and Fred Stella, Defendants.

No. 89400.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 17, 1998.

Rehearing Denied April 13, 1998.

Certiorari Denied June 24, 1998.

Tom L. King, Linda P. Brown, Scott F. McKinney, King Law Firm, Oklahoma City, for Appellee.

Jerome S. Sepkowitz, Gary L. Levine, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, for Appellant.

## OPINION

BOUDREAU, Judge.

¶1 Defendant Kampar Corporation (Kampar) appeals an order of the trial court refusing to vacate a default judgment previously entered against it as a sanction for discovery misconduct. The issue on appeal is whether the trial court abused its discretion in denying Kampar's timely-filed 12 O.S.Supp.1997 § 1031.1 plea to vacate. After a review of the record on appeal, we find that it did and reverse the trial court order refusing to vacate the default judgment.

### I

¶2 Plaintiff Hotels, Inc. (Hotels) filed an action against Kampar, a California corporation, alleging Kampar and other defendants were liable to it for lodging expenses incurred by a touring group known as Russian Ballet on Ice (RBI). Hotels alleged Kampar was liable on the basis that Hotels was third-party beneficiary of tour financing contracts which Kampar allegedly entered into with other defendants.

¶3 Kampar filed an answer pro se. In its answer, Kampar denied all liability to Hotels and denied it had entered into any contract with other defendants to finance the RBI tour.

¶4 On April 10, 1996, Hotels served Kampar with a set of interrogatories and requests for production of documents. Kampar failed to respond to the discovery requests within 30 days. On December 6, 1996, Hotels filed a motion to compel production of discovery against Kampar. The court set a hearing on the motion to compel for December 13, 1996. On that date, the trial court granted the motion to compel, in Kampar's absence, giving Kampar until December 23, 1996, to comply with Hotel's discovery requests.

¶5 On February 12, 1997, Hotels filed a motion for default judgment. On February 21, 1997, the trial court granted default judgment in favor of Hotels and against Kampar

in the amount of $69,406.19 with costs of $79 and attorney fees of $2,500. In the order granting default judgment, the trial court made no finding that Kampar's failure to comply with the order compelling discovery was willful or in bad faith.

¶ 6 Within 30 days of the filing of the default judgment, Kampar secured local counsel and filed a motion to vacate the default judgment. Kampar attached the overdue discovery responses to its motion to vacate. Nevertheless, the trial court denied Kampar's motion to vacate the default judgment. Kampar appeals from this order.

## II

¶ 7 The test for measuring the legal correctness of a trial court's response to a timely-filed section 1031.1 plea is "whether sound discretion was exercised upon sufficient cause shown to vacate, modify, open or correct the earlier decision, or to refuse the relief sought." *Advanced Machining & Fabricating, Inc. v. Doty,* 1994 OK CIV APP 172, ¶ 6, 894 P.2d 1139, 1140.

## III

¶ 8 Title 12 O.S.Supp.1997 § 3237(B)(2) of the Oklahoma Discovery Code permits a court to issue a variety of sanction orders "if a party ... fails to obey an order to provide or permit discovery." Section 3237(B)(2)(c) provides that one such order may include "[a]n order ... rendering a judgment by default." The task of determining a correct sanction for a discovery violation is a fact-specific inquiry that the trial court is best qualified to make. Therefore, we review the trial court's decision to enter a default judgment under an abuse of discretion standard. *See Moor v. Babbitt Products, Inc.,* 1978 OK 22, 575 P.2d 969.

¶ 9 At the outset, we recognize that Oklahoma views default judgments with disfavor and has an affirmative policy of affording "every party to an action a fair opportunity to present his side of a cause." *Burroughs v. Bob Martin Corp.,* 1975 OK 80, ¶ 23, 536 P.2d 339, 342. As a sanction, default judgments have been granted only when the discovery misconduct has been willful and extreme. *Amoco Production Co. v. Lindley,* 1980 OK 6, ¶ 18, 609 P.2d 733, 738. Accordingly, the granting of a default judgment as a sanction should be a method of last resort, rather than first resort.

¶ 10 Section 3237(B)(2)(c) of the Oklahoma Discovery Code is identical to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure. A number of federal circuit courts of appeal have addressed the issue of the factors that should be considered by the trial court when reviewing a lower court's dismissal of a plaintiff's complaint as a sanction for willful violation of the court's discovery orders. *Bank One of Cleveland v. Abbe,* 916 F.2d 1067 (6th Cir.1990); *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.,* 70 F.3d 1172 (10th Cir.1995). Because Oklahoma's section 3237(B)(2)(c) was adopted from the federal discovery rules, the decisions of the federal courts interpreting the discovery rules are persuasive authority for this court. *See Vanderslice v. Vanderslice,* 195 Okla. 496, 159 P.2d 560, 562 (1945).

¶ 11 In *Bank One of Cleveland,* the Sixth Circuit Court of Appeals identified four factors which should be considered prior to choosing dismissal as a sanction: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. 916 F.2d at 1073. In *Archibeque,* the Tenth Circuit Court of Appeals added a fifth factor to the analysis—the amount of interference with the judicial process. 70 F.3d at 1174. These factors are not a "rigid test" and the correct sanction is a fact-specific inquiry that the district court is in the best position to make. *Id.*

## IV

¶ 12 After considering the factors enumerated above as they are reflected in the record on appeal, we conclude the trial court abused its discretion in entering a de-

fault judgment. Neither the Journal Entry of Default Judgment nor other portions of the record reveal whether the trial judge explicitly considered the first factor, Kampar's culpability. The journal entry makes no finding that Kampar's failure to cooperate in discovery was due to willfulness, bad faith, or fault. The trial court's failure to address this issue in the order or elsewhere in the record causes us concern in view of the fact that it is not clear from the record whether Kampar, who was proceeding as a pro se litigant at the time, was ever served with the order compelling discovery.

¶ 13   With respect to the second factor, Kampar's actions, like all discovery misconduct, prejudiced its opposing party by causing unnecessary delay and requiring additional attorney fees to be expended to secure information that should have been provided when it was originally requested. In an attempt to secure the discovery material, Hotels filed a one-page motion to compel and a one-page motion for default judgment and appeared at an uncontested hearing on each motion. While certainly unnecessary, the additional expense incurred by Hotels was relatively minimal. The delay and additional expense occasioned by Kampar's discovery misconduct, standing alone, would not be sufficient to warrant a default judgment absent other justifying circumstances.

¶ 14   Hotels satisfied the third factor by filing its motion for default judgment, which clearly put Kampar on notice that failure to respond to the discovery requests could result in having judgment entered against it. Kampar clearly knew the risk inherent in its conduct.

¶ 15   In evaluating the fourth factor, it does not appear that the trial court adequately considered the efficacy of lesser sanctions. Rather than impose less drastic sanctions, such as ordering the payment of Hotels' reasonable expenses including attorney fees occasioned by Kampar's discovery misconduct, the trial court imposed the most severe sanction allowed by the statute, the granting of a default judgment. The record on appeal does not establish that the trial court considered whether a less severe sanction would have had the desired effect of securing Kampar's compliance and deterring it from further misconduct.

¶ 16   Finally, the fifth factor requires the trial court to assess the amount of interference with the judicial process occasioned by the discovery misconduct. Although all discovery misconduct necessarily impairs the efficiency of the judicial process, the trial court should have evaluated how substantially the misconduct impacted the case in controversy. An analysis of the record on appeal does not reveal that Kampar substantially interfered with the progress of this case. At the time the default judgment was entered, the trial process had not developed much beyond Kampar's answer. Also, Kampar's discovery misconduct did not require the trial court to spend a great deal of time and energy in attempting to exact Kampar's compliance.

¶ 17   Our analysis of this factor might be considerably different if, for instance, discovery had been closed and Hotels had been unable to prepare a meritorious summary judgment because of a lack of a response to discovery requests, if the trial court had to move a scheduled trial date because of Kampar's lack of cooperation with discovery, or if the trial court found itself directing too much time and effort in remedying persistent discovery violations by Kampar. However, none of these more aggravating conditions were present in this situation.

## V

¶ 18   In summary, the record on appeal does not reveal whether the trial judge explicitly considered Kampar's culpability. The record also seems to indicate that the trial court failed to adequately consider the efficacy of lesser sanctions. Finally, the record demonstrates that Kampar's misconduct did not seriously interfere with the judicial process. In view of the absence of these significant justifying circumstances, the fact Kampar was warned that judgment was imminent and its discovery misconduct caused some prejudice to Hotels is not sufficient to warrant the entry of a default judgement.

¶ 19   Only when the aggravating factors outweigh the Oklahoma judicial system's

strong predisposition to resolve cases on their merits is default judgment an appropriate sanction. Here, we conclude this is not the case. The trial court abused its discretion in failing to vacate the default judgment pursuant to a timely-filed section 1031.1 plea. The case is reversed and remanded to the trial court with directions to vacate the default judgment and to conduct a hearing to assess against Kampar the reasonable expenses, including attorney fees, occasioned by its misconduct.

¶20 REVERSED AND REMANDED WITH INSTRUCTIONS.

TAYLOR, C.J., and GOODMAN, P.J., concur.