**UNITED STATES of America ex rel. William I. KOCH and William A. Presley, Plaintiffs,**

v.

**KOCH INDUSTRIES, INC., et al., Defendants.**

No. 91–CV–763–K–(J).

United States District Court, N.D. Oklahoma.

Aug. 30, 1999.

Phil Pinnell, U.S. Attorney, Tulsa, OK, Stephen D. Altman, Gordon Jones, U.S. Department of Justice, Commercial Litigation, Civil Division, Washington, DC, for U.S. ex rel. Precision Co.

James M. Sturdivant, David Edward Keglovits, Kristin L. Oliver, Gable & Gotwals, Tulsa, OK, Grover White Turner, III, Roy Morrow Bell, Timothy P. Irving, James W. Stubblefield, Ross Dixon & Bell, LLP, San Diego, CA, for William I. Koch and William A. Presley.

Harvey D. Ellis, Jr., Clyde A. Muchmore, Timila S. Rother, Mark S. Grossman, Wesley C. Fredenburg, Crowe & Dunlevy, Oklahoma City, OK, Robert L. Howard, James M. Armstrong, Foulston & Siefkin, David Luce, Legal Dept. Litigation Section, Wichita, KS, for Koch Industries, Inc., Koch Exploration Co., Koch Service, Inc. and Koch Gathering Systems, Inc.

### ORDER

JOYNER, United States Magistrate Judge.

On August 6, 1998, the Court entered its findings and conclusions in connection with a May 1997 evidentiary hearing held on Plaintiffs' November 15, 1996 motion for sanctions.[1] The Court made findings and conclusions regarding what evidence Defendants had spoliated, the culpability with which it was spoliated, the importance of that evidence to Plaintiffs and the prejudice suffered by Plaintiffs as a result of the spoliation. Doc. No. 320. The Court then ordered the parties to submit additional briefs regarding the type and severity of sanction which should be imposed against Defendants. The parties have filed additional briefs addressing the sanction issue[2] and the Court heard additional argument regarding the nature of the sanction to be imposed at a February 23, 1999 hearing. The Court is now prepared to enter an appropriate sanction to remedy the spoliation identified in the Court's August 6, 1998 findings and conclusions.

### I. DISCUSSION

At the May 1997 evidentiary hearing, Plaintiffs attempted to demonstrate that all of the following was either intentionally altered or intentionally destroyed by Defendants to prevent the discovery of evidence of Defendants' alleged mismeasurement of oil and gas:

1. Over/Short Reports and Driver/Gauger Evaluations from Defendants' Northern Division;

2. Various computer tapes in Defendants' computer tape library in Wichita, Kansas;

3. Run tickets, crude oil waybills/truck tickets, and driver daily reports in Defendants' Breckenridge, Texas; El Reno, Oklahoma; and Hobbs, New Mexico offices;

4. Security department files shredded by Norman Vandiver; and

5. Unspecified documents allegedly shredded by David Nicastro.

After the May 1997 hearing, Plaintiffs submitted additional evidence in an attempt to demonstrate that the following had also been lost or destroyed by Defendants:

6. Thirty seven boxes of run tickets from 1981 to 1985; and

---

1. *See* Doc. Nos. 153, 154, 161, 207, 213, 216, 315, 320 and 325.

2. *See* Doc. Nos. 327, 357, 415, 424, 437, 438, 446, 454, 458, and 472.

7. Almost twenty four hundred boxes stored at Underground Vault and Storage in Wichita, Kansas containing Defendants' corporate records spanning from the 1960's to 1980.

Despite Plaintiffs' efforts, the Court only found that due to the negligence of Defendants' senior management, the following computer tapes were destroyed by Defendants' data processing personnel at a time when Defendants had a duty to preserve them: (1) tapes containing AHREG-STATMNT, AHREGSTATMNTBKUP, AHUNITSTMNTS, and AHUN-ITSTMNTSBKUP files for 1980–1983; (2) tapes containing CT1TICKETS and CT1TICKETSBU files for August 1986 to December 1987; and (3) tapes containing CRUDEBUWKLY weekly and year-end files for 1982–1987 (hereinafter "the Computer Tapes").

■ Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim. Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation. Some sanctions are designed to punish the spoliator. A punitive sanction advances the goals of retribution, specific deterrence, and general deterrence. Sanctions for spoliation may also be designed to promote accurate fact finding by the court or jury. A court may also choose to address spoliation by remedying any evidentiary imbalance caused by the spoliator's destruction of relevant evidence. A court should select the least onerous sanction necessary to serve these remedial purposes. While courts do consider many factors in determining an appropriate sanction for spoliation, the following two factors should ordinarily carry the most weight: the degree of culpability of the party who lost or destroyed the evidence, and the degree of actual prejudice to the other party. *See* Gorelick, Marzen and Solum, *Destruction of Evidence* § 1.11–1.13, 1.21 & 3.16 (1989 and 1997 Cum.Supp.) (citing many cases).

In their August 28, 1998 sanctions brief (doc. no. 327), Plaintiffs identify the sanctions they believe are warranted in light of the findings and conclusions in the Court's August 6, 1998 Order. The Court has reviewed Plaintiffs' requested sanctions with the principles discussed directly above in mind. Based on the level of Defendants' culpability (i.e., negligence) and the degree of actual prejudice suffered by Plaintiffs (i.e., minimal), as is more particularly detailed in the Court's previous findings and conclusions, the Court hereby imposes against Defendants the sanctions discussed below.

### A. ATTORNEY FEES AND COSTS

■ Plaintiffs seek to be reimbursed for the attorney fees and costs they incurred as a direct result of their investigation and proof of Defendants' spoliation of the Computer Tapes. The Court will not impose as a sanction against Defendants the Plaintiffs' attorney fees and costs. Plaintiffs lost on all of the spoliation claims they advanced, except the claim that the Computer Tapes had been spoliated. Plaintiffs' victory on the computer tape issue was also not absolute because Plaintiffs failed to establish that Defendants intentionally destroyed the Computer Tapes as Plaintiffs' alleged. Thus, Plaintiffs partially prevailed on one claim and Defendants prevailed on all other claims. Defendants would be as entitled to their fees and costs on the claims lost by Plaintiffs as Plaintiffs are entitled to their fees and costs on the computer tapes claim. The Court finds, therefore, that neither party shall be awarded attorney fees or costs in connection with Plaintiffs' motion for sanctions due to Defendants' spoliation.

### B. COST OF CREATING A SUBSTITUTE FOR THE SPOLIATED DATA

■ The Computer Tapes contained computer files and these computer files contained information which had been keypunched from Defendants' paper run tickets. It is undisputed that the run ticket information on the Computer Tapes is much easier to manipulate and analyze than is the same data on the original, paper run tickets. While the Computer Tapes are no longer available due to the negligence of Defendants' senior management, many of the original, paper run tickets still exist.

Plaintiffs have created two databases, which they wish to use as a substitute for the destroyed Computer Tapes. Plaintiffs selected what they describe as "a random, statistically-valid sample" of 1,000 out of approximately 90,000 paper run tickets from federal and non-Osage Indian leases for 1981–1987. Plaintiffs had information from these 1,000 paper run tickets entered into a computer database file ("the Federal/Indian database"). Plaintiffs located the 1987 paper run tickets from Osage Indian leases—approximately 23,000 tickets. Plaintiffs also had information from these paper run tickets entered into a computer database file ("the Osage database"). Plaintiffs wish to use the Federal/Indian and Osage databases to conduct the statistical analyses that they would have conducted with the files on the spoliated computer tapes.

Plaintiffs seek as a sanction against Defendants the cost of creating the Federal/Indian and Osage databases. Given the culpability of Defendants' conduct and the prejudice suffered by Plaintiffs due to the loss of the Computer Tapes, the Court finds that Defendants should reimburse Plaintiff for the reasonable cost of creating the Federal/Indian and Osage databases. Defendants also agree in principal that requiring them to pay for the creation of the Federal/Indian and Osage databases is an appropriate sanction given the Court's previous findings and conclusions. *See* Doc. No. 357, pp. 14, 18 and 20.

Plaintiffs have submitted a breakdown of the costs which they incurred in creating the Federal/Indian and Osage databases. *See* Doc. Nos. 415, 424 and 446. Defendants have reviewed that breakdown and have submitted their objections to certain of the costs reflected in the breakdown. *See* Doc. Nos. 437, 438, 454 and 472. Based on its review of Plaintiffs' breakdown and Defendants' objections and the evidence received at the May 1997 evidentiary hearing and the February 1999 hearing, the Court hereby finds that Defendants shall pay to Plaintiffs $200,000.00 as a sanction for the spoliation identified in the Court's previous findings and conclusions.

Plaintiffs bore the burden of establishing the reasonable amount of fees and costs nec-essary to create the Federal/Indian and Osage databases. Plaintiffs' submissions were generally vague and lacked detail. The Court did, therefore, reduce Plaintiffs' requested sanction accordingly. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court finds that requiring Defendants to pay Plaintiffs $200,000.00 for the creation of the Federal/Indian and Osage databases represents an adequate sanction in this case given Defendants' culpability and Plaintiffs' prejudice.

### C. ISSUE–RELATED SANCTIONS

Plaintiffs also seek non-monetary, issue-related sanctions. The Court will address each of these separately.

### 1. Derivative Evidence

■ Plaintiffs seek to preclude Defendants from "using any testimony, document, opinion, or other evidence derived from the [Computer Tapes]." Doc. No. 327, p. 8. Read literally, Plaintiffs' request is too broad because it would preclude any use of run statements, check stubs, financial statements, over/short reports, and MMS–2014's for those periods covered by the Computer Tapes. All of these documents for the period covered by the Computer Tapes are "derived" in part from the Computer Tapes. If Plaintiffs intended their request to be read literally, it is too broad and the Court will not impose such a sanction on Defendants. Nevertheless, as a sanction, Defendants are prohibited from using any exhibit or analysis prepared by using the spoliated Computer Tapes.

### 2. Use of Federal/Indian and Osage Databases

■ As a sanction, Plaintiffs wish the Court to make certain evidentiary rulings regarding the admissibility of certain statistical analyses performed by Plaintiffs using the Federal/Indian and Osage databases. The Court finds, however, that the evidentiary rulings requested by Plaintiffs are not justified as a sanction in this case.

If substitute databases that were representative of the data on the spoliated tapes were

to be created and paid for by Defendants as a sanction for their spoliation, the Court would have exercised control over the process of how the databases were to be created. In this case, however, Plaintiffs began, and substantially completed, the process of creating the Federal/Indian and Osage databases before the Court had determined that any evidence in this case had been spoliated and before the Court determined what remedy would be given for any alleged spoliation. Plaintiffs did, therefore, effectively deprive the Court of the ability to define what methods or procedures would be used to create substitute databases. Rather, the Court is now presented with Plaintiffs' databases, created without any Court supervision and without any involvement by Defendants. Given the level of Defendants' culpability and Plaintiffs' prejudice, the Court finds that Defendants should not be bound, as a sanction, by any evidentiary presumptions based on the data in the Federal/Indian and Osage databases.

Without ruling on any specific aspect of Plaintiffs' intended use of the Federal/Indian or Osage databases, the Court finds that significant issues do exist regarding the representativeness of the sample and the sampling process used to create the databases. The Court also finds significant issues exists regarding particular statistical uses to which Plaintiffs wish to put the databases. In short, Plaintiffs' attempted use of the databases presents complex issues of admissibility under the Federal Rules of Evidence. Based on the level of Defendants' culpability and Plaintiffs' prejudice regarding the spoliated evidence, the Court finds that these evidentiary issues regarding Plaintiffs' use of the databases should not be resolved against Defendants as a spoliation sanction.

As a sanction, the Court has required Defendants to reimburse Plaintiffs' reasonable costs for creating the Federal/Indian and Osage databases. The Court has, therefore, given Plaintiffs what Plaintiff themselves believe is a reasonable substitute for the spoliated computer tapes. Plaintiffs may now attempt to make whatever use of those databases they feel is appropriate under the

Federal Rules of Evidence. Plaintiffs have provided Defendants with a copy of the Federal/Indian and Osage databases, and Defendants are also free to make whatever use of those databases they feel is appropriate under the Rules of Evidence. Defendants are also free to create their own databases and attempt to use them at trial. However, all determinations regarding the admissibility of any particular use of a database (including whether the database, as constructed, is capable of generating reliable results for the particular use) will be resolved in the normal course, through motions in limine or evidentiary objections made during pretrial or trial, and not as a part of Plaintiffs' sanctions motion.

### 3. A "Routine Practice" Finding

■ Plaintiffs want the Court to find that the statistical trends that can be established using the information in the Federal/Indian and Osage databases is evidence of Defendants' routine measurement practices under Fed.R.Evid. 406. Doc. No. 327, p. 9. As is demonstrated by the briefing filed in connection with Defendants' September 2, 1998 motion for summary judgment, Plaintiffs' ability to establish Defendants' routine measurement practice under Rule 406 is a very important issue in this case because in many instances Plaintiffs do not have direct evidence of mismeasurement. *See* Doc. Nos. 331, 360 and 407. Where Plaintiffs have no direct evidence of mismeasurement, they wish to rely on Defendants' routine practice as established under Rule 406. Given the importance of a Rule 406 ruling in this case, the Court finds that resolving the issue against Defendants as a spoliation sanction, rather than on the merits as part of Defendants' motion for summary judgment, is not justified by Defendants' culpability and Plaintiffs' prejudice.

Plaintiffs also want to use information from post–1987 computer tapes for "purposes of establishing [Defendants'] pre–1988 measurement practices." Doc. No. 327, p. 9. Computer tapes containing run ticket information do not exist for any period prior to

1988.[3]  Computer tapes containing run ticket information do exist for 1988–1991.  Plaintiffs want the Court to enter an order as a sanction that the measurement practices that can be discerned from the post–1987 computer tapes are the same measurement practices that Defendants' were engaging in before 1988.  In other words, Plaintiffs want the Court to find that the information on the post–1987 tapes is sufficient to establish a routine practice that would be applicable to pre–1988 conduct.  This argument is not significantly different from Plaintiffs' Rule 406/routine practice argument and it is denied for the same reasons Plaintiffs' Rule 406 sanction was refused.

### CONCLUSION

The Court's August 6, 1998 Order outlines what evidence Defendants spoliated, the culpability with which it was spoliated, the importance of that evidence to Plaintiffs and the prejudice suffered by Plaintiffs as a result of the spoliation.  *See* Doc. No. 320.  This Order imposes the following sanctions as a result of the spoliation found in the Court's August 6, 1998 Order:

1.  Within 20 days from the date this Order is file-stamped, Defendants shall pay to Plaintiffs $200,000.00 for the creation of the Federal/Indian and Osage databases; and

2.  Defendants are prohibited from using any exhibit or analysis prepared by using the spoliated Computer Tapes.

Plaintiffs' Motion for Sanctions is, therefore, *GRANTED IN PART AND DENIED IN PART.* Doc. No. 153.

IT IS SO ORDERED.

---

**3.**  While there are no pre–1988 computer tapes, not all of those computer tapes were spoliated by Defendants.  Only the Computer Tapes identified above were spoliated (i.e., destroyed, other than by accident, at a time when there was a duty to preserve).