2008 OK 100

**Richard C. BARNETT, Appellee,**

v.

**Darryl K. SIMMONS and Paul A. Franks, Individually, and as Partners d/b/a Rock Oil Company, Appellants.**

No. 103,708.

Supreme Court of Oklahoma.

Nov. 10, 2008.

Roger K. Eldredge and Norman Wohlgemuth, Norman Wohlgemuth Chandler & Dowdell, Tulsa, Oklahoma for Defendants/Appellants.

James W. Rusher and Heath E. Hardcastle, Albright, Rusher & Hardcastle, PC, Tulsa, Oklahoma, for Plaintiff/Appellee.

HARGRAVE, J.

¶1 Plaintiff Richard C. Barnett (Barnett) sued defendants Darryl K. Simmons and Paul A. Franks, individually and as partners doing business as Rock Oil Company (Rock Oil), seeking unpaid royalties on sales of oil allegedly owed to him by Rock Oil as operator of a well producing on the Osborn lease. Barnett alleged that he had been underpaid for royalties on the Osborn lease and that Rock Oil had breached its fiduciary duty by inappropriately limiting production and by transporting oil produced from the Osborn lease to other leases. The petition was filed March 22, 2002. Rock Oil generally and specifically denied plaintiff's allegations.

¶2 Discovery established that plaintiff kept files on his computer that were related to his claims against Rock Oil. For example, Barnett measured and kept records of the amount of oil stored in tanks on the Osborn lease and claimed that his calculations varied from the production reported to the Oklahoma Corporation Commission. Barnett produced two undated "affidavits" from the pumper (who is also Barnett's son-in-law) on the Osborn lease, which were identical except for the amounts of daily production from that lease: one stated that production was 14–15 barrels per day and the other stated that production was 18–19 barrels per day. Both affidavits state that Rock Oil was moving oil from the Osborn lease to another lease and selling it as if it had been produced there. These affidavits were neither dated nor notarized and Rock Oil asserted that the affidavit stating that production was 18–19 barrels per day had been created by Barnett to support his claim of oil stolen from the Osborn lease. Rock Oil desired to discover the dates the affidavits were created on Barnett's computer in order to establish a possible statute of limitations defense. In addition, Barnett relied on an affidavit of a former employee of Rock Oil, Jim Cable, to support his claim that Rock Oil had agreed to drill a lateral well on the lease in order to increase production. Rock Oil maintained that there was no such agreement. Finally, Barnett testified that he may have prepared correspondence to the Oklahoma State Bureau of Investigation (OSBI) and the Oklahoma Corporation Commission relating to the Osborn lease on his computer, but Barnett failed to produce any such correspondence.

¶3 Rock Oil sought production of plaintiff's computer hard drive by document request. Plaintiff objected that the request was overly broad and unduly burdensome, as well as vague and ambiguous. Counsel attempted to negotiate a way to obtain the information sought, and a series of letters and emails from July 1, 2004 through September 2004 reflect that counsel for Rock Oil was actively pursuing production of plaintiff's computer hard drive. One letter suggested

that a "clone" be made of plaintiff's computer's hard drive and stated that an understanding had been reached with plaintiff's counsel that the parties would agree on an independent third-party computer expert to perform all work necessary to produce all relevant information and data on the hard drive to the defendants, while preserving the confidentiality of non-relevant information and data. A letter dated September 15, 2004 from Rock Oil's counsel to plaintiff's counsel refers to plaintiff's counsel's expressed resistance to a "clone" of plaintiff's computer. The letter assures plaintiff's counsel that the production of the computer files could be handled without cloning the hard drive. Rock Oil's counsel submitted a list of files that he intended to have the computer technician retrieve, and Data Sleuths, Inc., was suggested as a possible expert to accomplish this. Finally, the letter refers to modification of the parties' prior agreement so that plaintiff could use his own computer expert to monitor and participate in the production process.

¶4 On October 8, 2004, citing plaintiff's breach of their agreement regarding production of the computer files, defendants filed a motion to compel production of plaintiff's hard drive. Defendants' motion explained the relevance of the information on plaintiff's hard drive that it sought to discover and detailed the efforts that defendants had made to obtain the information and the parties' agreement that plaintiff allegedly breached. Defendants sought entry of an order compelling the plaintiff to allow inspection and review of the hard drive of his personal computer in connection with the production of all non-privileged electronic files that refer or relate to any of the following:

1. People: Darryl Simmons, Paul "Andy" Franks, Rock Oil, Al Mullins, Cartwright Trucking, Robert Olson, Richard Osborn, Billie Osborn, Perry Gilstrap, Jim Cable, Robert Terhune, Fred Perry, Roger McMillian;

2. Places: Osborn Lease, Murray Lease, Barnett Lease, TEC Lease

3. Themes: Stolen oil, overriding royalty, drainage of oil, motion activated cameras, oil production, photographs of oil leases and surrounding area;

4. Governmental Agencies: OSBI, Oklahoma corporation Commission, Oklahoma Tax Commission, United States Attorney's Office.

¶5 Judge Jane Wiseman orally granted the motion to compel on October 25, 2004 and a minute order was entered. The parties again attempted to arrange access to Barnett's computer by finding a neutral computer expert to examine it. As of December 23, 2004, the parties had agreed on Gary Glanz, of Glanz and Associates. On January 5, 2005, however, the plaintiff voluntarily dismissed his claims against the defendants without prejudice, pursuant to 12 O.S. § 684. Plaintiff's counsel indicated an intention to refile some of the claims within three months.[1]

¶6 On January 24, 2005, Rock Oil filed a motion for appointment of a neutral computer forensic expert and a motion for sanctions and contempt of court based upon plaintiff's apparent destruction of electronic computer files. Rock Oil argued that under Judge Wiseman's order compelling production, plaintiff had a duty to preserve the evidence and to produce it as ordered. Rock Oil stated that it learned, through the company selected to be the neutral third party, that plaintiff's computer had been worked on by others and may have been compromised. Rock Oil asserted that plaintiff should be held responsible for all fees and expenses associated with the examination of the plaintiff's hard drive by a neutral forensics expert and for reimbursing Rock Oil for all fees and costs associated with its briefs and all further discovery required relating to spoliation of plaintiff's hard drive. They asserted that the ultimate sanctions that could be entered by the court, such as payment of punitive damages, attorneys' fees and costs and/or a judgment against plaintiff on his claims against Rock Oil could be made at a final hearing after conclusion of the spoliation-related discovery.

---

1. Statements included in the record indicate that plaintiff refiled some of his claims in Case No. CJ–06–49 in Tulsa County District Court, styled *Barnett v. Simmons*.

¶ 7 Barnett's response to the motion admitted that the trial court had entered an order allowing discovery of certain electronic files contained on Barnett's hard drive and had ordered that the hard drive be searched for documents containing the identified terms. The response admits that subsequent to the order, the parties worked toward the production of those files, but that the files were not produced prior to the dismissal of the case. Barnett does not dispute that he had work done on his computer and he attached a "Computer Repair Report" as Exhibit 1. The plaintiff argues that dispositive sanctions are imposed only when the failure to comply with discovery demands it as the result of willfulness, bad faith or some fault of a party, citing *Gates Rubber v. Bando Chemical Industries,* 167 F.R.D. 90, 103 (D.Colo.1996). Barnett argues that there could be no showing of willfulness or bad faith on his part since he did nothing inappropriate.

¶ 8 Ultimately Barnett's hard drive was examined on two different occasions by a neutral third party computer forensic expert, Stadler, and his reports were submitted to the court. Hearings were held before trial judge Gordon D. McAllister, Jr., on August 31, 2005, December 1, 2005, February 13, 2006 and May 23, 2006. Numerous witnesses testified and volumes of exhibits were introduced which included a great deal of technical information. Rock Oil contended that plaintiff was aware at all relevant times of Rock Oil's attempts to have his hard drive produced and inspected and was aware of the motion to compel and the court's order requiring the production and inspection of his hard drive. Rock Oil maintained that at all relevant times the plaintiff was acting with the specific and deliberate intent of depriving Rock Oil of the use of relevant electronic evidence from his hard drive through the use of file-wiping programs and that plaintiff's actions were willful and malicious. Rock Oil argued that it had been greatly prejudiced by the destruction of the electronic files and that, under the circumstances, it would be fundamentally unfair to force Rock Oil to defend itself again against the plaintiff's oil theft claims. Rock Oil argued that severe sanctions should be imposed, such as an order barring plaintiff from prosecuting claims based on the allegations made in the original case. Under the court's inherent and contempt powers and pursuant to 12 O.S. § 3237, Rock Oil sought to be awarded twice the amount of its reasonable attorneys fees, costs and expenses incurred by its efforts to obtain production of the hard drive, the motion to compel, the sanctions motions and related discovery.

¶ 9 Plaintiff countered that he is a novice computer user who was having problems with his computer because it was severely infected with viruses, spyware and adware and that he sought professional help in correcting those problems. He first sought help from his friend, Dr. Olson, but Olson was not successful in fixing the computer problems. Barnett then hired a professional to repair his computer. Plaintiff maintained that at no time were evidentiary materials *intentionally* deleted from the computer and that the computer expert was using his expertise in determining what programs to run on the computer.

¶ 10 The record reflects that at least three kinds of "wiping" software were downloaded onto Barnett's computer during the period that Rock Oil was actively negotiating with Barnett's counsel to obtain the information contained on Barnett's hard drive. AbsoluteShield File Shredder was used on September 10, 2004 and a file named "cable.doc" was removed. On September 14, 2004, the programs CyberScrub 3.5 and Window Washer were installed on Barnett's computer and the Window Washer program ran several times on that date. The record reflects that the CyberScrub 3.5 program was last accessed on the same date that the motion to compel was granted by Judge Wiseman.

¶ 11 The record further reveals that in November 2004, after the motion to compel was granted by Judge Wiseman, plaintiff contacted a computer security company, Jarvis Incorporated, and asked about hiring a computer expert to work on his computer. On Jarvis's recommendation, the plaintiff hired Chris Byers to work on his computer. The plaintiff did not tell either Jarvis or Byers that the computer was the subject of a

court order and/or that certain files needed to be preserved before it was worked on. Chris Byers testified that he could have preserved the hard drive before working on it by making a "clone" of it if he had known it was needed. Byers removed plaintiff's hard drive and worked on it for approximately one week and used a "drive wiper" program called Terminus 6 on the hard drive. Barnett admits that Byers used the Terminus program on his computer and admits targeted destruction of specific files by Byers due to Barnett's not wanting to lose the settings on his computer. Barnett says that it was Byers' decision to use the wiping software. The neutral court-appointed expert, Tim Stadler, found no evidence that files associated with viruses had been destroyed with the Terminus program. Stadler stated that a log identifying the files deleted by the Terminus program had itself been deleted. Stadler's report stated that there were six documents with links in the Recent Documents folder of plaintiff's computer that had no matching document on the hard drive, indicating that the files had been deleted.

¶ 12 The trial judge ruled that sanctions should only be applied if the plaintiff's conduct was willful and that defendants had failed in their burden to show that plaintiff's actions were willful rather than those of an innocent computer novice.[2] Rock Oil appealed. The Court of Civil Appeals, in a split decision, affirmed the trial court's finding that plaintiff's conduct was not willful, defining willfulness as requiring a showing of "malicious intent to deprive Rock Oil of evidence material to their defense." They held that the trial court erred, however, in ruling that sanctions should be imposed only if plaintiff's conduct was willful. They directed the trial court to reconsider the motion for sanctions in light of whether plaintiff's conduct was negligent. Both parties filed petitions for writ of certiorari to this Court and both petitions were granted.

¶ 13 Plaintiff voluntarily dismissed his case without prejudice prior to the computer's hard drive being produced as ordered by the court and prior to the filing of defendants' motion for sanctions. A trial court retains jurisdiction to impose sanctions for plaintiff's violation of court orders entered before plaintiff has voluntarily dismissed the case. *Bentley v. Hickory Coal Corp.*, 1992 OK CIV APP 68, 849 P.2d 417 (ordered published and given precedential value by the Supreme Court). *Bentley* held that counsel's dismissal of homeowners' action

2. The trial judge's findings of fact were:
1. The lawsuit was commenced by plaintiff against defendants on May 22, 2002.
2. That as part of the discovery process, an oral order granting defendants' motion to compel was entered allowing defendants, among other things, the right to inspect plaintiff's computer;
3. That on November 22, 2004, the attorneys for the parties had a conference call with Clayton Woodrum about engaging him as a neutral computer technician;
4. That beginning on November 23, 2004, plaintiff took steps to engage Chris Byers of the Tulsa County Sheriff's Office to "repair" his computer. Plaintiff complained that his computer would not start up, would lock up, and that someone was accessing his computer through the internet. This contact was made by plaintiff after his neighbor, Dr. Olson (allegedly more familiar with computer operation than plaintiff) was unable to correct the problem;
5. Between November 26, 2004 and December 3, 2004, Mr. Byers worked on plaintiff's computer using, among other programs, a file wiping software to correct the alleged problems;

6. That ultimately Tim Stadler of the Tulsa Police Department was selected by the parties to conduct the neutral examination of plaintiff's computer. Mr. Stadler concluded that Chris Byers had been unwittingly used by plaintiff to destroy relevant computer files.
7. That the Court heard testimony of Mr. Byers, Mr. Stadler and other experts summoned as witness by each of the parties.
8. While defendants contended that plaintiff willfully caused the destruction of various computer files in an effort to prevent discovery of relevant evidence, plaintiff countered that he is a less than novice computer user who had a severely infected hard drive and that he sought professional help in correcting his computer problems.
Trial judge concluded as a matter of law that:
1) Defendants have the burden of proof.
2) The sanctions sought by defendants should be imposed only upon a showing of willfulness. The court finds that the defendants have failed in their burden to show that the acts of the plaintiff were willful and not the innocent acts of a computer novice and therefore the defendant's motion for sanctions and/or contempt is denied.

against two coal companies did not deprive the trial court of jurisdiction to hold a contempt hearing and to sanction counsel for violations of trial court orders committed before dismissal of the cases. We find that the trial court retained jurisdiction in this matter to determine whether the plaintiff violated the trial court's order.

¶ 14 A trial judge is empowered by Oklahoma's discovery code to sanction parties or attorneys who violate discovery orders. Title 12 O.S. Supp.2007 § 3237(B)(2) provides for sanctions to be imposed by the court for failure to obey an order to provide or permit discovery.[3] A motion to compel is a prerequisite to sanctions being imposed under § 3237. *Helton v. Coleman*, 1991 OK 43, 811 P.2d 100, 101 (§ 3237 was formerly § 3214). Likewise, the § 3237 sanctions must be based upon the failure to obey an order of the court. *Martin v. Johnson*, 1998 OK 127 ¶ 37, 975 P.2d 889, 899. A trial court also has inherent authority to impose sanctions for abuse of the discovery process. That is, the trial court has the power to sanction for abusive litigation practices or for abuse of judicial process, even if an order compelling discovery has not been made. *See, Bentley v. Hickory Coal*, 849 P.2d at 420.

¶ 15 Section 3237(B)(2) consists of two parts. First, it provides that if a party fails to obey an order to provide or permit discovery, the court may make such orders in regard to the failure as are just. Such orders may include, among other things, refusing to allow the disobedient party to support or oppose designated claims or defenses, prohibiting the party from introducing designated matters in evidence, treating the failure to obey as contempt of court, dismissing the case or entering default judgment.[4] The next paragraph provides that in lieu of, or in addition to, the orders described in a) through f), the court *shall* require the party failing to obey the order to pay the reasonable expenses, including attorney fees, caused by the failure, *unless* the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

¶ 16 Section 3237(B)(2) is patterned after Rule 37(b)(2) of the Federal Rules of Civil Procedure; therefore, federal jurisprudence is instructive when interpreting the Oklahoma provisions. *Payne v. DeWitt*, 1999 OK 93, 995 P.2d 1088, 1092–93 (§ 3237(B)(2) of the Oklahoma Discovery Code is patterned on the Federal Rules of Civil Procedure and parallels precisely the terms of FRCP 37 in describing the range of sanctions a court is permitted to employ).[5] We said in *Payne* that the sanctions provided in the federal

3. 2 O.S. Supp.2007 § 3237 provides:

> B. FAILURE TO COMPLY WITH ORDER
> * * *
> 2. SANCTION BY COURT IN WHICH ACTION IS PENDING. If a party .... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just. Such orders may include the following:
> a. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order,
> b. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence,
> c. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party,

> d. In lieu of or in addition to the orders provided for in subparagraphs a through c of this paragraph, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination,
> e) ....
> f) ....
> In lieu of or in addition to the orders provided for in this paragraph, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

4. See footnote 1 for text of subsections a)-f).

5. A subsection was added to Rule 37 in 2006 to provide a "safe harbor" for a party's failure to provide electronically stored information lost as a result of the routine, good faith operation of an electronic information system. FRCP 37(f).

rule and its Oklahoma counterpart are designed as tools to compel production of evidence, compensate adversaries for unnecessary expense and deter misconduct.

¶ 17 Section 3237(B)(2), like Federal Rule 37(b)(2), authorizes sanctions against a party or his representative for *failure to comply* with the court's order. It is not a requirement that a party act willfully or in bad faith. *Card Technology Corp. v. Data-Card, Inc.*, 249 F.R.D. 567, 570 (D.Minn. 2008). The suggestion that sanctions cannot properly be imposed absent a showing of willful refusal to produce is "clearly wrong." *Atlantic Cape Fisheries v. Hartford Fire Ins. Co.*, 509 F.2d 577, 579 (1st Cir.1975), cited in *Card Technology, supra* at 570. The United States Supreme Court has said in *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 208, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958), in interpreting federal Rule 37(b)(2):

> For purposes of subdivision (b)(2) of Rule 37, we think that a party "refuses to obey" simply by failing to comply with an order. So construed the Rule allows a court all the flexibility it might need in framing an order appropriate to a particular situation. Whatever its reasons, petitioner did not comply with the production order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply.[6]

Thus, willfulness of party's conduct is relevant to the severity of the sanction to be imposed, not whether a sanction should be imposed. The rule does not limit the trial court's discretion in imposing less severe sanctions if warranted. *See, Kropp v. Ziebarth*, 557 F.2d 142, 147 (8th Cir.1977) (on remand district court may consider the imposition of less extreme sanctions set forth in Rule 37(B)(2)).

¶ 18 Oklahoma courts have held that the most severe sanctions, such as dismissal or default judgment, should be imposed only when the party's conduct was willful or in bad faith. *Payne v. DeWitt*, 1999 OK 93, 995 P.2d 1088; *Moor v. Babbitt Products, Inc.*, 1978 OK 22, 575 P.2d 969; *Hotels, Inc. v. Kampar Corp.*, 1998 OK CIV APP 93, 964 P.2d 933, *cert. denied*, (June 24, 1998). *See also, Nu–Pro, Inc. v. G.L. Bartlett & Co., Inc.*, 1977 OK 225, 575 P.2d 618 (default judgment based on defendant's failure to comply with orders of the court compelling them to answer interrogatories served on them under (now repealed) 12 O.S. § 549(c)).

¶ 19 This Court has also held that severe sanctions may be imposed for reasonably foreseeable destruction of evidence, even when there is no discovery order in place. In *Holm–Waddle v. William D. Hawley, M.D., Inc.*, 1998 OK 53, 967 P.2d 1180, 1182, we held that an examination reasonably foreseeably destructive of evidence done without notice to opposing counsel which does result in destruction of evidence should expose a party to severe sanction (adopting the standard set out in *Barker v. Bledsoe*, 85 F.R.D. 545 (W.D.Okla.1979). In *Holm–Waddle* we said:

> When an expert employed by a party or his attorney conducts an examination reasonably foreseeably destructive without notice to opposing counsel and such examination results in either negligent or intentional destruction of evidence, thereby rendering it impossible for an opposing party to obtain a fair trial; it appears that the court would not only be empowered, but required to take appropriate action, either to dismiss the suit altogether or to ameliorate the ill-gotten advantage. 967 P.2d 1180, 1182 (citing *Barker v. Bledsoe*, 85 F.R.D. 545 (W.D.Okla.1979).

In *Holm–Waddle*, a medical malpractice action was pending at the time the plaintiff died. An autopsy was performed by a medical expert hired by plaintiff's counsel. The

---

**6.** At the time *Societe* was decided, Fed. Rule 37(b) used the term "refuses to obey." Some courts had concluded that the use of the word "refuses" indicated Congressional intent to impose a willfulness requirement. Congress changed the language of FRCP 37(b)(2)(C) from "refuses to obey" to "fails to obey" to bring the rule in harmony with *Societe* and to clarify that the rule did not require a showing of willfulness. *Belinskey v. Clooten*, 214 Or.App. 172, 164 P.3d 1163, 1167 fn. 2 (2007).

autopsy was limited to the organs concerned in the malpractice action. The plaintiff's body was then cremated and no notice was given to defendants of either the plaintiff's death, the autopsy or the cremation. Defendant's counsel learned of the autopsy two months later while interviewing a potential witness. Defendant moved to dismiss the action, citing a party's duty to supplement discovery and a lawyer's ethical duty not to obstruct another party's access to evidence. The trial court did not dismiss the action, but prohibited any use of evidence from the autopsy except samples and slides. The trial court noted its specific finding of gross and intentional misconduct on the part of plaintiff's expert witness and the plaintiff's family. We stated that the defendant was entitled to notice, but that notice was not given. Observing that the trial court properly could have dismissed the action, we affirmed the trial court's decision to exclude evidence derived from the undisclosed autopsy.

¶ 20 A litigant who is on notice that documents and information in its possession are relevant to litigation or potential litigation or are reasonably calculated to lead to the discovery of admissible evidence has a duty to preserve such evidence. In *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir.2001), the Fourth Circuit Court of Appeals stated that the duty to preserve material evidence arises when a party reasonably should know that the evidence may be relevant to anticipated litigation, stating:

> The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.... If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence (citations omitted).

In *United States v. Koch Industries, Inc.*, 197 F.R.D. 463, 486 (N.D.Okla.1998), it was held that when oil company became aware or should have become aware that oil and gas measurement-related litigation was imminent, it should have taken affirmative steps at that time to control destruction of potentially relevant computer files stored in its computer tape library and that it was negligent in not doing so.

¶ 21 Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *West v. Goodyear Tire*, 167 F.3d 776, 779 (2nd Cir.1999). In *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, 987 P.2d 1185, 1202, spoliation was defined as the destruction or significant and meaningful alteration of a document or instrument. We said that spoliation occurs when evidence relevant to ˙prospective civil litigation is destroyed, adversely affecting the ability of a litigant to prove his or her claim. *Id.*, 987 P.2d at 1202. Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim. *Koch v. Koch Industries, Inc.*, 197 F.R.D. 488, 490 (N.D.Okla.1999).

¶ 22 In the case at bar, plaintiff was aware that his hard drive was the subject of a discovery request. The wiping software programs were downloaded on plaintiff's computer at a time when plaintiff's counsel and defense counsel were actively working to produce the hard drive for inspection. Then, after plaintiff had been ordered by the court to produce the hard drive for examination, plaintiff hired a computer expert to work on the computer, without informing defendants' counsel that he was about to have work done on the computer's hard drive. Neither did Barnett inform his hired computer expert that the hard drive was subject to a court order. The expert testified that he could have produced a "clone" of Barnett's hard drive before working on it, but that Barnett did not inform him that the hard drive was the subject of a court order.

¶ 23 The standard of review for a trial court's grant or denial of discovery sanctions is abuse of discretion. *Payne v. DeWitt*, 1999 OK 93, 995 P.2d 1088, 1096; *State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, 61 P.3d 234; *Meadows v. Wal–*

*Mart Stores, Inc.*, 2001 OK 25, 21 P.3d 48. A trial court's ruling on a request for sanctions will not be disturbed unless contrary to the weight of evidence or to a governing principle of law. *State ex rel. Moshe Tal*, 61 P.3d at 240.

¶ 24 We find that the trial court in this case erred as a matter of law by applying an erroneous standard and failing to make necessary findings. The trial judge applied an erroneous standard when he determined that sanctions should be applied only if plaintiff's conduct was shown to be willful. Section 3237(B)(2) contains no requirement of willfulness, nor does its federal counterpart, Rule 37(b)(2). Section 3237(B)(2) states that if a party has "failed to obey" an order of the court the court may enter orders that are just. Willfulness or bad faith, or intentional conduct, goes to the *severity* of the sanctions to be imposed, and the most severe sanctions, such as dismissal of the case, should be imposed only where the party's conduct is intentional, willful or in bad faith. Accordingly, the trial court's ruling that sanctions should be imposed only if plaintiff's conduct was willful must be reversed.

¶ 25 Further, as to the plaintiff's conduct, the trial court failed to take into account varying degrees of willfulness and failed to consider the standard set out in *Holm–Waddle v. William D. Hawley, M.D., Inc.*, 1998 OK 53, 967 P.2d 1180, 1182, "where one hires an expert to conduct an examination that is reasonably foreseeably destructive of evidence and does in fact destroy evidence that would prejudice the opposing party's right to a fair trial." Barnett may have been a computer novice, but he hired a computer expert to do work on his computer. It was foreseeable that having the computer worked on by others could result in alteration of the hard drive and possible destruction of files thereon. Barnett did not, however, inform the defendants' counsel of his intention to have the computer worked on, nor did he inform the computer expert that the computer's hard drive was subject to a court order. Here, the trial judge did not

find that relevant evidence had not been destroyed, but found that "the neutral computer expert, Mr. Stadler, concluded that Chris Byers had been unwittingly used by plaintiff to destroy relevant computer files." There are varying degrees of willfulness.[7] In *Schaeffer v. Shaeffer*, 1987 OK 30, 743 P.2d 1038, 1040, in determining whether attorney fees should be awarded in a case involving "willful or negligent injury to property," we discussed different meanings of "willfully." We said that the word is often used without an implication of evil intent in denouncing acts not in themselves wrong, and that in such cases the word denotes that which is "intentional, knowing or voluntary, as distinguished from accidental," and that it characterizes conduct marked by careless disregard.

¶ 26 The task of determining a correct sanction for a discovery violation is a fact-specific inquiry that the trial court is best qualified to make. *Hotels, Inc. v. Kampar Corp., supra*, 964 P.2d at 935. In making that decision the trial court's discretion, while broad, is not unbridled—the sanction must be both fair and related to the particular claim or defense at issue in the discovery order. *Payne v. DeWitt*, 1999 OK 93, 995 P.2d 1088, 1093. Factors that should be considered prior to choosing the most severe sanctions include the following: willfulness, prejudice, whether there was a warning that failure to cooperate could lead to dismissal, whether less drastic sanctions were imposed or considered, and the amount of interference with judicial process. *Payne v. DeWitt, supra; Hotels, Inc. v. Kampar Corp.*, 1998 OK CIV APP 93, 964 P.2d 933 (*cert den.*).

¶ 27 The trial court in the case at bar applied an improper standard for sanctions under § 3237 and did not determine whether plaintiff failed to obey the court's order, whether plaintiff violated his duty to preserve evidence, the level of plaintiff's culpability and whether Rock Oil was unfairly prejudiced. The trial court's order must be reversed and remanded for reconsideration of Rock Oil's motion.

7. See discussion in *Parret v. UNICCO Service Co.*, 2005 OK 54, 127 P.3d 572, 576.

CERTIORARI HAVING BEEN PREVIOUSLY GRANTED, THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED AND THE TRIAL COURT'S ORDER IS REVERSED AND REMANDED.

¶28 CONCUR: WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, KAUGER, TAYLOR, COLBERT, REIF, JJ.

¶29 DISSENT: OPALA (JOINS WATT, J.), WATT (BY SEPARATE WRITING), JJ.

WATT, J., with whom OPALA, J. joins, dissenting:

¶1 I dissent for the reasons expressed in the dissent to the Court of Civil Appeals opinion, ¶38 providing:

"When there is no motion for sanctions pending and a plaintiff dismisses his claims the trial court loses jurisdiction to act further in the matter. *General Motors Acceptance Corp. v. Carpenter*, 1978 OK 39, 576 P.2d 1166, 1168; *Elliott v. McCaleb*, 2006 OK CIV APP 87, 139 P.3d 253, 255–256; *McCully v. Wil–Mc Oil Co.* 1994 OK CIV APP 111, 879 P.2d 150, 153." [Footnotes omitted.]