2017 OK CIV APP 37

OKMULGEE COUNTY FAMILY RE-SOURCE CENTER, INC., an Oklahoma Non–Profit Corporation, Plaintiff/Appellee,

v.

Danette MACKEY, an Individual, Defendant/Appellant.

Case Number: 114160

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 03/09/2017

Mandate Issued: 07/26/2017

Christopher L. Camp, CAMP LAW FIRM, Tulsa, Oklahoma, for Plaintiff/Appellee

Cynthia Rowe D'Antonio, GREEN JOHNSON MUMINA & D'ANTONIO, Oklahoma City, Oklahoma, for Defendant/Appellant

P. THOMAS THORNBRUGH, VICE–CHIEF JUDGE:

¶1 Defendant, Danette Mackey, appeals the order and judgment of the District Court of Okmulgee County, entered on June 30, 2015, granting Plaintiff, Okmulgee County Family Resources Center, Inc. (OCFRC), de-fault judgment and damages, together with attorney fees and costs, as a discovery sanction. On review,[1] we hold that the district court abused its discretion by (1) granting a default judgment of liability as a sanction for the claimed discovery violation in the absence of a viable order compelling Mackey to answer prior to the imposition of sanctions; and (2) awarding actual damages, together with attorney fees and costs, as a sanction without affording Mackey notice and an opportunity to contest OCFRC's claims at hearing. We reverse the lower court's orders and judgments, and remand for further proceedings.

## BACKGROUND

¶2 This appeal arises from the trial court's "Final Judgment," entered on June 30, 2015, granting OCFRC default judgment and damages, together with attorney fees and costs, as a discovery sanction, because Mackey declined to answer certain questions at a deposition set by OCFRC as part of its malicious prosecution action against Mackey.

¶3 The record reflects that on October 26, 2010, Mackey, through counsel, filed a complaint against OCFRC in the United States District Court for the Northern District of Oklahoma (Case No. 11-CV-662), alleging federal Title VII violations that she claimed had occurred during Mackey's employment with OCFRC. The federal court granted summary judgment in favor of OCFRC, and dismissed Mackey's state law wage claims without prejudice to refiling.[2]

■ ¶4 Based on the ruling in the federal case in its favor, OCFRC sued Mackey for malicious prosecution in the District Court of Okmulgee County (Case No. CJ-2014-00081) on April 22, 2014. Mackey, appearing *pro se*, timely filed her answer on May 12, 2014, claiming as a defense, *inter alia*, that she had relied upon the advice of counsel.[3]

---

1. The parties and counsel appeared and presented oral argument on January 10, 2017, at this Court's request.

2. None of the court filings related to the federal case are included in the record on appeal.

3. Reliance on counsel's advice, after "a *full and fair disclosure of known [as distinguished from discoverable] material facts*," can be, if true, a complete defense to a malicious prosecution claim. *Greenberg v. Wolfberg*, 1994 OK 147, n.30, 890 P.2d 895.

¶ 5 The court entered a scheduling order[4] on July 9, 2014, setting a discovery cut-off date of November 10, 2014. A dispute then developed concerning the efforts of OCFRC's counsel, Christopher Camp, to secure Mackey's deposition. OCFRC claims that Mackey was sent statutory notice of the deposition together with a subpoena to appear for the deposition to be held at the OCFRC offices on November 3, 2014.[5]

¶ 6 On October 31, 2014 (three days before the noticed deposition), Mackey moved to quash the subpoena directing her to appear for the deposition.[6] Mackey argued that the parties had not engaged in any written discovery; that OCFRC had withheld information regarding a key witness in the case; that she did not have adequate time to prepare; and that the location of the requested deposition (at OCFRC's offices) imposed an unfair burden due to Mackey's safety concerns. Mackey also filed a motion to amend the scheduling order to extend discovery deadlines to January 30, 2015.[7]

¶ 7 OCFRC opposed Mackey's motions, and filed its own combined motion for relief by responding to Mackey's motion to quash and by seeking an order compelling discovery, citing 12 O.S.2011 3237(E).[8] On November 19, 2014, the trial court heard and considered Mackey's motion to quash and motion to extend deadlines, along with OCFRC's motion for relief and opposition to motion to quash. The court entered a "Court Minute"[9] that, *inter alia*, directed Mackey to appear on December 12, 2014, for deposition. The minute was on a pre-printed Okmulgee County form, and will be discussed in our analysis below.

¶ 8 On December 12, 2014, Mackey appeared for deposition as instructed by the court. Mackey was not represented by counsel at the deposition. It is undisputed that she declined to answer questions by asserting by her Fifth Amendment right against self-incrimination. Mackey testified that she was invoking her Fifth Amendment privilege based upon advice, but she declined to disclose the name of the person on whom she had relied. In her appellate brief in chief, Mackey asserts she was advised by counsel that the malicious prosecution action against her had criminal consequences in addition to civil consequences.[10]

¶ 9 OCFRC'S attorney, Camp, ended the deposition but did not apply for an order compelling Mackey to answer the questions she had declined to answer.[11] On April 21, 2015 (some four months after the deposition was adjourned), OCFRC filed a "Motion for Default Judgment or other Appropriate Sanctions." This motion cited 12 O.S.2011 3237(B), and alleged that Mackey had failed to comply with the court's November 19, 2014 minute order by refusing to answer questions on Fifth Amendment grounds.[12] OCFRC also suggested that Mackey hindered the discovery process by bringing an infant to the December 12, 2014 deposition.[13] OCFRC's motion was not verified, and according to the record on appeal, was never

---

4. Scheduling Order, Record at 30.

5. While the record shows that the notice and subpoena were unclaimed, it is undisputed that Mackey had actual notice.

6. Motion to Quash Subpoena, Record at 32–33.

7. Motion to Extend Deadlines, Record at 34–35.

8. OCFRC's motion and response, Record at 36–61.

9. Record at 62.

10. Appellant's Brief in Chief at page 4. At oral argument, Mackey's counsel admitted that this fact was circumstantially derived, and there is no record evidence as to any advice of counsel.

11. Title 12 O.S.2011 3237(A)(2) provides, "When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order [compelling an answer]."

12. In this motion, OCFRC treats the "Court Minute" of November 19, 2014, as the legal equivalent of an order, and asserts that the court ordered Mackey to answer all questions posed without regard to her right to assert her Fifth Amendment privilege under the U.S. Constitution.

13. This claim was abandoned and is not an issue on appeal.

set or noticed for a hearing.[14]

¶ 10 On June 8, 2015, the trial court entered a journal entry granting OCFRC's motion for default judgment against Mackey as to liability, by way of sanction pursuant to 12 O.S.2011 3237(B). The court found that Mackey, "[d]espite this Court's admonition, on December 12, 2014, after being sworn and stating her name for the record . . . . refused to answer all but one (1) of the one hundred sixty-four (164) questions propounded by OCFRC's attorney, purporting to 'assert [her] Fifth Amendment rights under the United States Constitution.' "[15] According to the court, no hearing was required prior to entry of its order because Mackey had failed to file a brief in opposition as provided by Rule 4(e), 12 O.S. Supp. 2013, Ch. 2, App., Rules for the District Courts of Oklahoma (District Court Rules). As a consequence, the court stated, it was authorized to treat Mackey's failure as "an implicit concession that [OCFRC's] arguments have merit" so as to work as "a voluntary waiver by Mackey of her opposition to such arguments." Accordingly, the court deemed OCFRC'S motion to have been confessed.[16]

¶ 11 In a separate part of the journal entry, the court noted that, "[b]ecause the amount of damages sought is not readily ascertainable from the face of OCFRC's Petition," OCFRC was directed to submit (within 20 days) an affidavit describing the amount of damages it sought together with its reasonable expenses, including attorney fees, incurred as a result of Mackey's "failure to comply with this Court's *discovery order of November 19, 2014*" (emphasis added). The journal entry further recited that the court would then *"enter final judgment by separate order after submission of that affidavit"* (emphasis added).[17]

¶ 12 Thereafter, on June 29, 2015, Attorney Camp submitted, directly to the court, his billing records and an affidavit declaring that OCFRC incurred damages of $141,305.74 in the form of attorney fees expended in defending the federal action, and an additional $9,809.40 in attorney fees and expenses due to Mackey's failure to comply with *the Court's minute order of November 19, 2014*.[18] The parties dispute whether Mackey received a copy of Camp's affidavit and records.[19]

¶ 13 The day after receiving Camp's affidavit and records, on June 30, 2015, the trial court apparently reviewed the items and entered its "Final Judgment" in favor of OCFRC and against Mackey in the sum of $141,305.74 as damages on OCFRC's claim for malicious prosecution, and the additional sum of $9,225.00 in attorney fees, plus costs of $584.40, as a result of Mackey's failure to comply with the Court's discovery order of November 19, 2014.[20] This order was entered without hearing or notice to Mackey. It is from this judgment that Mackey now appeals.

## STANDARD OF REVIEW

¶ 14 We review the correctness of the trial court's imposition of sanctions under the abuse of discretion standard. *Payne v. Dewitt*, 1999 OK 93, ¶ 9, 995 P.2d 1088; *State ex rel. Moshe Tal v. City of Okla. City*, 2002 OK 97, ¶ 2, 61 P.3d 234; *Meadows v. Wal-Mart Stores, Inc.*, 2001 OK 25, ¶ 5, 21 P.3d 48. To reverse for abuse of discretion, "it

14. District Court Rule 4(c) provides, "Motions raising fact issues shall be verified by a person having knowledge of the facts, if possible; otherwise, a verified statement by counsel of what the proof will show will suffice until a hearing or stipulation can be provided."

15. Journal Entry of Judgment, filed June 8, 2015, Record at 141–147.

16. Journal Entry, Record at 143, footnote 1. District Court Rule 4(e) provides that under such circumstances **"the motion may be deemed confessed"** (emphasis added).

17. Journal Entry, Record at 144.

18. Camp's affidavit dated June 26, 2015, and billing records, Record at 150–206.

19. Mackey maintains that whether she received or refused delivery is of little importance since the certified mail receipts show the affidavit and billing records were mailed on the same day the judge entered his decision. See Record at 86–89.

20. Final Judgment dated June 30, 2015, Record at page 208. The sum of the damages appears to be based upon the attorney fees Camp maintained were incurred in the federal action.

must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." *Abel v. Tisdale*, 1980 OK 161, ¶ 20, 619 P.2d 608. To determine whether an abuse of discretion occurred, a review of the facts and the law is essential. *Bd. of Regents of Univ. of Okla. v. Nat'l Collegiate Athletic Ass'n*, 1977 OK 17, ¶ 3, 561 P.2d 499.

## ANALYSIS

■ ¶ 15 The key to analyzing Mackey's claim that the court erred in its sanction judgments is found in the Oklahoma Discovery Code and the clear and unambiguous case law that **a motion to compel is a prerequisite to sanctions being imposed for violations of discovery orders.** *Helton v. Coleman*, 1991 OK 43, ¶¶ 10–13, 811 P.2d 100. OCFRC argues that this requirement was met because the court's minute order following hearing on Mackey's motion to quash was an "order compelling discovery" that Mackey subsequently breached during her December 2014 deposition. The prime questions, therefore, are (1) whether the district court's minute order of November 19, 2014,[21] was an "order compelling discovery," and (2) whether Mackey *violated* that order by refusing to answer questions at her deposition on Fifth Amendment grounds.

¶ 16 In most cases, an analysis of whether the court has entered the requisite order compelling discovery prior to imposing sanctions is a relatively straightforward matter.

Such is not the case here. Our analysis is complicated by the fact that there is no transcript of the court proceedings of November 19, 2014, that purportedly formed the basis for the later sanction of default judgment.

## I. THE PRE–DEPOSITION PROCEEDINGS

¶ 17 The pre-deposition proceedings began with Mackey's October 31, 2014 motion to quash a subpoena directing her to appear for a November 3, 2014 deposition at the OCFRC offices, and her motion to extend discovery deadlines.[22] This was evidently the first discovery request made in this case. The court entered an order on the same date, setting Mackey's motions for hearing on November 19, 2014, a date 16 days after the challenged deposition was scheduled.[23]

¶ 18 OCFRC waited until the day before the hearing to respond, filing a motion that not only responded to Mackey's motions but also raised other claims for relief. OCFRC took the position that, notwithstanding Mackey's motion to quash on October 31, and the order and notice of hearing filed by the court on the same date, Mackey was still obligated by subpoena to attend the November 3, 2014 deposition.[24] OCFRC thus additionally asserted that it was entitled to sanctions relief as provided for by 12 O.S.2011 3237(E)(1), for fees and costs incurred in preparing for the November 3 deposition, and for an order "compelling discovery."[25] OCFRC's new motion was granted the next day.

---

21. The term "minute order" has no legal meaning. Minute orders are never a fit substitute for the judge's recordable memorialized entry, and are, by definition, incomplete. *Manning v. State ex rel. Dept. of Pub. Safety*, 1994 OK 62, ¶ 6, 876 P.2d 667. The practice of using "court minutes" as the functional equivalent of a recordable entry for the judgment roll, triggering appeal time and memorializing a decision, continues to be problematic and renders the sanction judgment here a nullity. *See Mansell v. City of Lawton*, 1994 OK 75, 877 P.2d 1120.

Justice Winchester, writing for a unanimous Supreme Court in *Alexander v. Alexander*, 2015 OK 52, ¶ 11, 357 P.3d 481, made clear in language that is impossible not to understand that "documents titled as court minutes .... can never constitute a judgment, decree or appealable order." Justice Opala, writing separately in *Mansell v. City of Lawton*, put it even more succinctly, declaring that, "TRIAL JUDGES SHOULD BE INSTRUCTED TO *SIGN* ONLY THOSE INSTRUMENTS WHICH THEY INTEND TO BE FILED AND ENTERED ON THE JOURNAL AS JUDGMENTS, DECREES OR ORDERS." 1994 OK 75 at ¶ 22, 877 P.2d 1120 (Opala, J., concurring in result)(emphasis in original).

22. Record at 32–35.

23. Record at 31.

24. During oral argument before this Court on January 10, 2017, counsel for OCFRC stated that he had had some conversations with Mackey regarding the venue for the depositions, but we have no record whether Mackey told counsel that she would not be attending the November 3 deposition.

25. *See* OCFRC motion and response filed November 18, 2014, Record at 36–51.

A. The District Court Ruled on OCFRC's 3237(E) Motion Without Effective Notice or a Reasonable Opportunity for Mackey to Respond

¶ 19 The first serious problem with this process is the fact that OCFRC filed its motion seeking discovery sanctions and an order compelling discovery less than 24 hours before the hearing at which the court granted that motion. A motion requesting sanctions is not one that can be decided without briefing pursuant to District Court Rule 4. However, Mackey was given no opportunity whatsoever to brief this matter. The certificate of service on what was essentially both OCFRC's reply **and** a motion affirmatively seeking both sanctions pursuant to 12 O.S.2011 3237(E) and a discovery order indicates that the motion was only *mailed* to Mackey on November 18. Even assuming *arguendo* that Mackey received the motion early on the morning of November 19 before departing for her 10 a.m. court appearance, it is clear that she was given no notice that the claims for sanctions and an order to compel would be heard that day, and that she had absolutely no realistic opportunity to prepare a response. Although we do not base our decision on these facts, we note that they raise a serious due process problem.

¶ 20 The exact legal effect of the resulting, November 19 minute order takes on considerable significance in this case, because that order is the basis for the court's later order of default as a sanction for alleged discovery order violations. OCFRC argued that the November 19 order was "an order compelling discovery" that Mackey subsequently violated during her December 12 deposition. Hence, OCFRC argues, it could move for sanctions against Mackey for refusal to answer questions at deposition without first complying with the rule of *Helton* that an order to compel is a prerequisite to sanctions being imposed for violations of discovery orders.

II. A VALID MOTION TO COMPEL IS A PREREQUISITE TO SANCTIONS IMPOSED FOR VIOLATIONS OF DISCOVERY ORDERS

¶ 21 Our first order of business, therefore, is to determine whether the court entered an order compelling discovery that Mackey failed to obey. Failure to obtain such an order would be fatal to OCFRC's quest for sanctions, and would render the trial court's order imposing sanctions, which is the subject of this appeal, void.

¶ 22 We reiterate that Oklahoma case law is clear that a motion to compel is a prerequisite to sanctions being imposed pursuant to 12 O.S.2011 3237. *See Helton*, 1991 OK 43 at ¶ 11, 811 P.2d 100, citing with approval, *Hill v. Pierce Mobile Homes, Inc.*, 1987 OK CIV APP 40, 738 P.2d 1380, and stating the Court was "persuaded that the Court of Appeals correctly concluded" in *Hill* that an order compelling discovery is a prerequisite to sanctions being imposed by the court. *See also Martin v. Johnson*, 1998 OK 127, ¶ 37, 975 P.2d 889 ("We conclude that when a party fails to appear at a deposition, and a sanction in the form of a dismissal is sought pursuant to the combined authority of 3237(B)(2) and (E), the dismissal must be based upon the failure to obey an order compelling the person to attend the deposition.")

¶ 23 More recently, in *Barnett v. Simmons*, 2008 OK 100, 197 P.3d 12, our Supreme Court affirmed that the correct procedure for determining whether sanctions should be imposed for a claimed discovery violation under 3237(B)(2) is to determine first, if the party has, " 'failed to obey' " an order of the court instead of focusing on whether the party's conduct was intentional, willful, or in bad faith. *See Barnett*, at ¶ 24.

¶ 24 To act as the required prerequisite for OCFRC's sanctions request, the November 19 order must, therefore, have two attributes: first, it must be *an order compelling discovery*; and second, it must have specifically prohibited Mackey from *refusing to answer questions on privilege grounds* during the December 12 deposition.[26]

---

**26.** We find it clear that when *Helton* and *Barnett* hold that an order compelling is a prerequisite to sanctions, the sanctioned party must disobey a

*specific command of the order to compel* to justify sanctions. The bare existence of an order com-

### A. Was the November 19 Order An "Order Compelling Discovery?"

¶ 25 We will assume, for purposes of this opinion only, that the November 19 order was an "order compelling discovery." We include the *caveat* because the district court's order stated that it was granting relief pursuant to 3237(E), which deals with sanctions for a failure to attend, not pursuant to a motion to compel.[27] We further note that the imposition of any sanction for non-attendance pursuant to 3237(E) may be excused by the trial court if "the party failing to act has applied for a protective order as provided by subsection C of Section 3226 of this title."

¶ 26 However, OCFRC chose to omit this line from its citation of 3237(E) in its response to Mackey's motion to quash, and we have no record that the trial judge considered this applicable principle. We need not consider any use of the district court's discretion in this matter, however, because, even if the order was one compelling discovery, it compelled only Mackey's attendance at a new deposition site.

### B. Did the Order Compel Mackey Not to Invoke Privilege in the Deposition?

█ ¶ 27 We have canvassed the entire record on appeal, and find no documented support for OCFRC's position that Mackey's refusal to answer questions at the deposition by invoking her Fifth Amendment rights violated the November 19 order of the court. We find nothing in the "Court Minute" that would or could serve to put Mackey on notice that she was prohibited from such conduct or that she ran the risk of default judgment as a sanction for invoking her Fifth Amendment claims at the December 12 deposition. The principle is very simple: An order made on *November 19* could not possibly be read as directing Mackey to answer all questions posed on *December 12*, because the district court had **no idea what those questions were going to be,** and therefore had **no idea** whether a legitimate privilege existed at the time it made the order.

¶ 28 We find this principle clear. A court cannot "compel" a deponent to answer a question without having some basic knowledge of what the question will be. OCFRC, however, argues that the court's order required Mackey not simply to attend a deposition, but to "submit" to a deposition. OCFRC argues, essentially, that the court, by using the word "submit," entered an order compelling Mackey not to behave as she did in the December 12 deposition, and, hence, OCFRC could move immediately for sanctions for failure to comply with the order. We find no support for this position in Oklahoma law, and reject it.[28]

### C. Additional Oral Orders

█ ¶ 29 Although we have found the district court's November 19 order could not serve as the required prerequisite for sanctions for Mackey's conduct at the December 12 deposition, OCFRC argues that the district court made a **more extensive oral or-**

---

pelling discovery does not justify sanctions unless the order's specific commands are breached.

**27.** Subsection E, states in relevant part:

If a party ... fails:
1. To appear before the officer who is to take the deposition, after being served with a proper notice; ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs a, b and c of paragraph 2 of subsection B of this section. In lieu of or in addition to any order, the court shall require the party failing to act or the attorney advising him or her or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other

circumstances make an award of expenses unjust.

**28.** At oral argument before this Court, OCFRC cited a federal trial court order indicating the federal judge's opinion that there is a difference between an order "setting a deposition" and one requiring a party to "submit to a deposition." Although federal interpretations of similar federal rules may be persuasive in interpreting the Oklahoma rules (*Mehdipour v. State ex rel. Dept. of Corrections*, 2004 OK 19, ¶ 18, 90 P.3d 546), we also note that this principle was developed before online reporting of the daily decisions of federal trial judges became common. This new phenomenon has created a situation where the opinions of federal trial judges potentially may be cited as persuasive authority in Oklahoma, while the opinions of Oklahoma's own trial judges may not.

der at the same time, and this oral order could serve as a basis for sanctions.

¶ 30 According to Attorney Camp's narrative:

[ ]. Following arguments, the court denied Mackey's *Motion to Quash* and ordered Mackey to submit to deposition by oral examination. Specifically, the trial court ordered Mackey to appear at Gaither Law Office in Henryetta, Oklahoma, at 9:00 a.m. on December 12, 2014 to be sworn, and to answer the questions posed.

[ ]. In open court, *the trial court also expressly admonished Mackey that cavalierly disregarding her obligation to cooperate in discovery would not be tolerated and could warrant severe sanctions.*[29]

OCFRC Answer Brief at pp. 10–11 (emphasis added).

¶ 31 Eight months passed before the district court belatedly recorded, in its journal entry of June 8, 2015, that it had made any such "oral order." Why such a clearly significant ruling was not recorded in the November 19 minute is unknown to us. Nonetheless, OCFRC argues that this belatedly memorialized statement from the bench constituted a valid "oral order" compelling discovery and giving OCFRC a basis to later seek discovery sanctions without complying with *Helton.*

¶ 32 Even assuming, without agreeing, that this confirmation by the judge some eight months later renders his statement to Mackey that "cavalierly disregarding her obligation to cooperate in discovery would not be tolerated and could warrant severe sanctions" an effective "oral order" on November 19, 2014, we agree with Mackey that this "oral order" was in no way specific enough to constitute an order that Mackey could not interpose any privilege objection at deposition.

¶ 33 We find that Mackey did not violate a prior discovery order of the court during the November 19 deposition. The imposition of a sanction default on that basis, therefore, was an abuse of discretion.[30]

## V. THE COURT'S ENTRY OF DAMAGES POST–DEFAULT WITHOUT NOTICE OR HEARING VIOLATED MACKEY'S STATUTORY RIGHTS

¶ 34 The fact that Mackey was never offered an opportunity to contest the quantum of the money damages awarded against her is also troubling. **A default admits the right to recovery, but not the amount of damages.** *State ex rel. Okla. Bar Ass'n v. Todd,* 1992 OK 81, ¶ 15, 833 P.2d 260. In the assessment of damages following entry of a default judgment, the defaulting party has a statutory right to a hearing on the extent of unliquidated damages. *Payne,* 1999 OK 93 at ¶ 12, 995 P.2d 1088. Encompassed within this right is the opportunity to a fair post-default inquest at which both the plaintiff and defendant can participate in the proceedings by cross-examining witnesses and introducing evidence on their own behalf. *Id.,* ¶ 13.

A default declaration, imposed as a 3237 (B) (2) sanction, cannot extend beyond saddling the defendant with liability for the harm occasioned .... *The trial court must leave to a meaningful inquiry the quantum of actual and punitive damages without stripping the party in default of basic forensic devices to test the truth of the plaintiff's evidence.*

*Id.,* ¶ 12 (emphasis added).

¶ 35 In *Payne,* the district court set a hearing on the quantum of damages, but tried the issue "sans jury and without participation by Dewitt's counsel." *Id.,* ¶ 6. The Supreme Court held that this "crippling of Dewitt by stripping him of basic due process truth-testing devices is contrary to the orderly process of assessing damages." *Id.,* ¶ 14.

---

**29.** We need not address whether such an order would be an abuse of discretion, but note that, at the time these remarks were allegedly made, the only record action by Mackey that may have shown a "refusal to cooperate" was her filing of a motion to quash a deposition and extend discovery. We are doubtful that a court would describe the same behavior by an aggressive attorney as a "cavalier disregard of obligations." A

*pro se* litigant is to be held to the same (not *higher*) standards than a represented party.

**30.** Because neither the record nor OCFRC's arguments in this appeal warrant doing so, this opinion does not address the district court's authority to enforce discovery orders through contempt proceedings.

Despite the clear dictate of *Payne*, that "[i]n the assessment of damages following entry of default judgment, a defaulting party *has a statutory right* to a hearing on the extent of liquidated damages," *id.*, ¶ 12 (emphasis in original), OCFRC argues that the defaulting party must demand that "statutory right" before the court is, required to respect it. OCFRC argues that Mackey had some form of notice that the court was going to consider damages because she had received the order asking OCFRC to submit a "damages affidavit," and it then became her duty to request a hearing on damages.[31] We do not agree that this position complies with *Payne*.

¶ 36 Further, even if we were to accept that a court may award unliquidated damages after a default without setting any hearing on the matter and based solely on an affidavit, the record here is clear that Mackey received Camp's affidavit outlining OCFRC's case for damages, at best, less than 24 hours before the court entered its damages award.[32] Even if, as proposed by OCFRC, a court is not required to hold a hearing on unliquidated damages after default unless the defendant requests one, it is beyond our ability to comprehend how a defendant might determine he/she wants a hearing without knowing *what those requested damages are.*

¶ 37 This crippling of Mackey's basic due process truth-testing devices by depriving her of any opportunity to question or examine Camp's affidavit or other material, finds no support in Oklahoma statutes or case law, and cannot be allowed to stand.

## VI. THE RECORD IS SILENT ON THE RIGHT TO RECOVER FEES, INCURRED IN THE DEFENSE OF A FEDERAL TITLE VII ACTION, AS DAMAGES

¶ 38 Because the record is silent as to the trial court's rationale for awarding by default OCFRC's attorney fees in Mackey's federal Title VII action as damages in the state malicious prosecution action, we do not know the underlying legal basis for the award. Although there is a specific federal statute allowing a prevailing defendant in a discrimination suit under Title VII of the Civil Rights Act of 1964 to recover attorney fees, it sets, as a matter of federal policy, a high bar, requiring a showing that the plaintiff's case was *frivolous, unreasonable, or without foundation*. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). An action is frivolous if it is based on an "indisputably meritless legal theory," or if its "factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989).

¶ 39 In announcing this standard, the United States Supreme Court cautioned district courts to avoid hindsight logic that equates frivolousness with the plaintiff's ultimate failure to prevail. *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. at 700–01. Even "[a]llegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*." *Hughes v. Rowe*, 449 U.S. 5, 15–16, 101 S.Ct. 173, 179, 66 L.Ed.2d 163 (1980). So long as the plaintiff has "some basis" for the discrimination claim, a prevailing defendant may not recover attorney fees. *Obin v. Dist. No. 9 of Internat'l Ass'n of Machinists*, 651 F.2d 574, 587 (8th Cir. 1981). We find it clear that summary judgment in the federal case here establishes none of the elements required to recover fees pursuant to these principles.[33]

### A. Seeking Fees for Defending Title VII Cases as Damages in State Courts

¶ 40 Given the high bar that the U.S. Congress has presented to prevailing defen-

---

**31.** The original order filed by the court on June 30, 2015, was amended on April 11, 2016, to reflect that Camp's affidavit, together with the billing records, had been expressly ordered submitted to the court, and provided the basis for the court's award of damages and attorney fees. Record at 232–235.

**32.** Mackey denies receiving the affidavit at all before the court awarded damages.

**33.** OCFRC argues that the required elements of malicious prosecution would suffice to show an entitlement to fees under the federal standard, and that Mackey "confessed" malicious prosecution by failing to answer OCFRC's motion seeking default as a sanction. We will not, at this time, enter this thicket and determine if a party who fails to answer a motion confesses not only the factual allegations of the motion, but also the

dants attempting to recover fees in a Title VII discrimination suit, Oklahoma courts must exercise careful discretion in awarding such fees as "damages" in a state suit decided by default. If the state provides a procedure by which defendants may avoid the high bar to the recovery of fees purposefully set in federal court, it may obstruct the federal purpose embodied in that standard.[34]

¶ 41 Hence, we find it clear that attorney fees incurred in defending a suit under Title VII can only be awarded as damages in an Oklahoma case if the court conducts the inquiry required by *Christiansburg* and *Hughes*. We are doubtful that these elements can be established without record evidence merely by the default "confession" of a motion pursuant to District Court Rule 4(e).

¶ 42 More fundamentally, a question arises as to whether a party may choose to seek fees as a remedy in a subsequent action when the same fees were available as a statutory entitlement in the original action. Under the American Rule, a party may not recover attorney fees either as costs or as an element of damages unless a contractual, statutory, or equitable exception applies. It is entirely rational that the state should *equitably* allow prevailing party fees to be recovered as damages for malicious prosecution *when no adequate remedy for this damage is available in the underlying action.* It is less rational that the law should allow a prevailing party to file a new suit, in a separate court, attempting to recover fees as damages, when the party was entitled to fees in the prior action, and that party *waived the right to seek them.* If a party already has an **entitlement** to fees in one court by virtue of being the prevailing party, we see no rational reason why the law should allow that party to refuse that entitlement and instead begin other proceedings where it must prove **additional elements** in order to recover the same fees. The entire process ignores the potential application of

the preclusion doctrine, offends judicial economy, and implicates forum shopping.

¶ 43 During oral argument, this Court asked OCFRC if it could provide any authority that a party may decline to seek available fees in an underlying case, and then claim the same fees as damages in a subsequent malicious prosecution action. OCFRC cited *Kolosky v. Anchor Hocking Corp.*, No. CA 83-236, 1984 WL 48997 (W.D. Pa. July 11, 1984), as an example of this process. *Kolosky* held, at *5 (footnotes omitted):

> [A] cause of action for malicious prosecution and abuse of process does not lie at this point. However, the Court adds that this does not preclude defendant from instituting a separate action for malicious prosecution and abuse of process if it ultimately prevails in this case.

In a related footnote, the court added the following statement:

> Moreover, this holding does not preclude defendant from moving for attorney's fees and costs, under 42 U.S.C. 2000e-5(k), if it prevails on the Title VII action.

*Id.* at n. 6.

¶ 44 OCFRC argues that the combination of this paragraph and footnote holds that seeking fees as damages in a malicious prosecution action is simply an alternative remedy to seeking them in the prior Title VII case. We interpret the case differently, and think it more likely that the court held that "... a cause of action for malicious prosecution and abuse of process does not lie at this point" **and** this holding does not preclude defendant from moving for attorney fees and costs, under 42 U.S.C. 2000e-5(k), *if it prevails on the Title VII action.* We do not find *Kolosky* persuasive here.

## B. Preclusion/Limitations Questions

¶ 45 In federal court, if attorney fees are available after the claims have been re-

---

legal conclusions the movant would have the court draw from those facts. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court), however, indicates that a court has a responsibility to ensure that summary relief is justified pursuant to the facts confessed, even if the opposing party mounts no opposition.

**34.** "To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701.

solved, the litigant must claim the fees by filing a motion within 14 days of the entry of judgment. Fed. R. Civ. P. 54(d)(2). Although some federal authority provides for tolling this statutory requirement by post-judgment motion (*see, e.g., Weyant v. Okst,* 198 F.3d 311, 315 (2d Cir. 1999)), OCFRC did not seek fees in the federal case at all, and intentionally allowed its right to recover these fees in the underlying federal action to expire.[35] We note that a substantial undecided question exists whether OCFRC may seek these fees as viable damages when they were available in the underlying case but OCFRC declined to seek them within the required time.[36] Accordingly, on remand, if OCFRC's fees incurred in the federal case are again presented as damages in the state malicious prosecution case, we urge the trial court to carefully examine whether such fees may be claimed as viable damages, in the first instance, as a matter of law.

### CONCLUSION

¶ 46 We emphasize that this case is an unusual one in many aspects. Its irregularity is doubtless exacerbated by the fact that Defendant Mackey was unrepresented by counsel during the pre-sanction and post-sanction proceedings. Nevertheless, the record shows a process that deprived Mackey of due process involving lack of notice and opportunity to be heard. Key relief was twice granted by the court *within 24 hours of OCFRC filing documents requesting that relief,* and a written order was supplemented months later by a description of an "oral

order" that substantially changed the nature of the original written order.

¶ 47 The errors we correct here can be avoided if such matters arise on remand by the entry of appropriate orders which specifically delineate the scope of discovery as provided in the Oklahoma Discovery Code, so as to put a recalcitrant party on notice that violations of these orders may result in sanctions to be determined at a future hearing. Hearings should be noticed and set so as to allow an adequate time for response. If such sanctions should issue, the trial court will be mindful that a post-sanction award of damages must afford an opportunity to the offending party to oppose those damages at an appropriate hearing.

¶ 48 Accordingly, the trial court's sanction order of default judgment entered against Defendant Mackey, and its subsequent damages award upon default together with attorney's fees and costs, are reversed. The matter is remanded for further proceedings consistent with this opinion.

¶ 49 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, J., and FISCHER, J. (sitting by designation), concur.

---

**35.** OCFRC's damages affidavit indicates that it did seek costs in the federal case, but no time is attributed to a fee application.

**36.** This issue would not arise in a case where a defendant is not entitled to fees in the underlying

action, again reinforcing the concept that fees as damages for malicious prosecution may be limited to cases where there is no adequate remedy in the original case.